Muhammad EL–AMIN, Plaintiff,

v.

Melvin TIREY, et al., Defendants.

No. 91–3029.

United States District Court,
W.D. Tennessee, W.D.

March 8, 1993.

Muhammad El–Amin,. pro se.

· Alan E. Glenn, Evans & Petree, Memphis, TN, for defendant.

## ORDER GRANTING PARTIAL SUMMARY JUDGMENT

McCALLA, District Judge.

Plaintiff, Muhammad El–Amin, an inmate at the West Tennessee High Security Facility (WTHSF) in Henning, Tennessee, formerly confined at Fort Pillow Prison and Farm (Fort Pillow) in Henning, filed this complaint under 42 U.S.C. § 1983.

Plaintiff claims that the defendants violated his right to due process when he was charged with and convicted of the disciplinary offense of "creating a disturbance." Plaintiff alleges that on May 22, 1991, while he was talking to a number of Fort Pillow inmates assigned to "long-line" work crews about filing grievances, defendant Jeffery Beaver charged him with the disciplinary offense of "creating a disturbance."

Defendant correctional officers Rodney Hemby and Charles Ring were present during the incident and testified during the subsequent disciplinary hearing. A disciplinary board composed of defendants Melvin Tirey, the chairman, Bonnie Foster and Bennie Moore found El–Amin guilty of creating a disturbance, found that his conduct was sufficiently serious to be categorized as a "Class A" offense, and imposed twenty days punitive segregation.

On administrative appeal, the decision was affirmed by both defendant Fort Pillow warden Charles Noles and defendant Assistant Tennessee Department of Corrections (TDOC) Commissioner Charles Bass. El–Amin alleges that members of his family informed defendant W. Jeff Reynolds, the former TDOC Commissioner, that Fort Pillow officials had disciplined him in retaliation for filing grievances and assisting other inmates to file grievances. El–Amin alleges Reynolds neither investigated those allegations nor took corrective action to remedy the abuse of the disciplinary process. Plaintiff seeks injunctive relief and compensatory and punitive damages.

Defendants Reynolds, Bass, Noles, Tirey, Foster, Moore, Hemby, and Ring have filed a motion for summary judgment. Defendant Beaver has recently filed an answer, but has not sought to join in the motion. The motion asserts that the defendants conducted the disciplinary proceedings in accordance with due process, and that they are entitled to qualified immunity. El–Amin has filed a short response consisting only of legal arguments.

Under Rule 56(c), summary judgment is proper if:

> The pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.

*Fed.R.Civ.P. 56(c); see Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). So long as the movant has met the initial burden of "demonstrat[ing] the absence of a genuine issue of material fact," *id.* at 323, 106 S.Ct. at 2552, the nonmoving party then "must set forth specific facts showing that there is a genuine issue for trial." *Fed.R.Civ.P. 56(e).* If the nonmoving party is unable to make such a showing, summary judgment is appropriate. *Emmons v. McLaughlin,* 874 F.2d 351, 353 (6th Cir.1989). In considering a motion for summary judgment, "the evidence as well as the inferences drawn therefrom must be read in the light most favorable to the party opposing the motion." *Kochins v. Linden–Alimak, Inc.,* 799 F.2d 1128, 1133 (6th Cir.1986).

Pursuant to Rule 56(e), when confronted with a properly supported motion · for summary judgment, the non-moving party "must set forth specific facts showing that there is a genuine issue for trial." A genuine issue of material fact exists "if the evidence [presented by the non-moving party] is such that a reasonable jury could return a verdict for the non-moving party." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). In essence, the inquiry is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that

one party must prevail as a matter of law." *Id.* at 251–52, 106 S.Ct. at 2512.

■ Inmates enjoy a narrow set of due process rights when prison authorities institute disciplinary proceedings. *See Cleavinger v. Saxner,* 474 U.S. 193, 106 S.Ct. 496, 88 L.Ed.2d 507 (1985) (disciplinary board members protected by qualified immunity); *Superintendent v. Hill,* 472 U.S. 445, 455–56, 105 S.Ct. 2768, 2774, 86 L.Ed.2d 356 (1985) (disciplinary findings satisfy due process if supported by any evidence, however meager) (hereinafter *Hill* ); *Ponte v. Real,* 471 U.S. 491, 495–99, 105 S.Ct. 2192, 2195–97, 85 L.Ed.2d 553 (1985) (disciplinary board need not make contemporaneous record of reasons live witnesses for inmate not allowed); *Baxter v. Palmigiano,* 425 U.S. 308, 319–323, 96 S.Ct. 1551, 1558–60, 47 L.Ed.2d 810 (1976) (disciplinary board may draw adverse inference from inmate's silence; inmate has no right to cross-examination); *Wolff v. McDonnell,* 418 U.S. 539, 564–71, 94 S.Ct. 2963, 2978–82, 41 L.Ed.2d 935 (1974) (defining scope of due process application to prison disciplinary hearings) (hereinafter *Wolff* ); *Wolfel v. Morris,* 972 F.2d 712 (6th Cir.1992); *Hensley v. Wilson,* 850 F.2d 269 (6th Cir. 1988); *Hudson v. Edmonson,* 848 F.2d 682 (6th Cir.1988); *Turney v. Scroggy,* 831 F.2d 135 (6th Cir.1987).

■ In general, "[a]s long as the conditions or degree of confinement to which the prisoner is subjected is within the sentence imposed upon him and is not otherwise violative of the Constitution, the Due Process Clause does not in itself subject an inmate's treatment by prison authorities to judicial oversight." *Montanye v. Haymes,* 427 U.S. 236, 242, 96 S.Ct. 2543, 2547, 49 L.Ed.2d 466 (1976). Thus there is no federal constitutional right to be held in a prison system's general population, or in a particular part of a prison. *See Hewitt v. Helms,* 459 U.S. 460, 468–69, 103 S.Ct. 864, 870, 74 L.Ed.2d 675 (1983); *Wolff,* 418 U.S. at 556–57, 94 S.Ct. at 2975. Nevertheless, "the repeated use of explicitly mandatory language in connection with requiring specific substantive predicates demands a conclusion that the State has created a protected liberty interest." *Hewitt,* 459 U.S. at 472, 103 S.Ct. at 871.

■ Tennessee prison regulations have been interpreted to create a liberty interest in inmates not being confined to punitive or administrative segregation without due process protections. *Franklin v. Aycock,* 795 F.2d 1253, 1260 (6th Cir.1986) (disciplinary segregation); *Bills v. Henderson,* 631 F.2d 1287, 1294 (6th Cir.1980). Due process therefore requires that a Tennessee prison inmate confined to punitive segregation or deprived of sentence credits be provided a disciplinary hearing in compliance with *Wolff* and *Hill.*

## I. Plaintiff's Claims

El–Amin claims that the disciplinary proceedings were not conducted in compliance with the due process requirements enunciated in *Wolff v. McDonnell,* 418 U.S. at 564–71, 94 S.Ct. at 2978–81. In particular, he asserts that: the disciplinary offense with which he was charged, "creating a disturbance," is unconstitutionally vague; that the disciplinary board was not impartial; that defendant Tirey improperly prohibited him from presenting live testimony from other inmates; and that the disciplinary conviction was not supported by any evidence. Plaintiff also alleges that the defendants violated his equal protection rights by charging him with "creating a disturbance," but not charging any of the inmates who were listening to him with any disciplinary offense. Plaintiff also alleges that the disciplinary report infringed upon his First Amendment rights. Finally, he alleges that the entire disciplinary proceeding arose out of a conspiracy by the defendants to retaliate against him for pursuing grievances.

## II. Court's Analysis

### A. Retaliation Claim

■ Dealing first with the retaliation claim, the motivation of prison officials in bringing disciplinary charges is irrelevant if the inmate has not been deprived of due process. The inmate's right to due process is protected by the entire hearing procedure, and is not violated merely by a false report. An inmate does not have a liberty interest in not being charged with disciplinary viola-

tions. *See, e.g., Wolfel,* 972 F.2d at 716; *Freeman v. Rideout,* 808 F.2d 949, 951 (2d Cir.1986); *Sweeney v. Norris,* slip op. at 3, 1988 WL 3478, 1988 U.S. APP. LEXIS 438 (6th Cir. January 19, 1988) (unpublished decision following *Freeman*).[1] If the procedures enunciated in *Wolff* are followed, the prisoner's due process rights are protected, regardless of the truth of the initial report. *See, e.g., Freeman,* 808 F.2d at 951; *Sweeney,* slip op. at 3.

■ A claim of retaliation must include a "chronology of events from which retaliation may plausibly be inferred." *Cain v. Lane,* 857 F.2d 1139, 1143 n. 6 (7th Cir.1988). Furthermore, an inmate claiming retaliation for an exercise of First Amendment rights must show more than a subsequent disciplinary charge. Rather, the prison official's conduct must transcend all bounds of reasonable conduct and shock the conscience. *Williams v. Smith,* 717 F.Supp. 523 (W.D.Mich.1989).

■ In this case, the defendants have submitted affidavits denying any retaliatory motives and explaining that their actions were based strictly on the need to maintain institutional order and security. The plaintiff has submitted no facts to rebut these contentions, or to support his claim of a retaliatory conspiracy. Furthermore, the Court has examined the entire record of the disciplinary hearing closely. The record reveals no evidence of such a conspiracy. There is therefore no genuine issue of material fact that the defendants did not conspire to retaliate against plaintiff for his filing grievances on behalf of the Fort Pillow long-line work crews, and accordingly, defendants' motion for summary judgment on the issue of retaliation is hereby GRANTED.

### B. First Amendment Claim

■ Plaintiff nevertheless contends that the disciplinary proceedings infringed upon his First Amendment right to pursue grievances and to communicate with other inmates concerning grievances. As discussed, *infra,* there is no genuine issue of material fact that the disciplinary report was filed because of plaintiff's disruptive conduct. The report was not filed to punish him for speaking about grievances or pursuing grievances. In fact, shortly after the disciplinary hearing in this matter, the plaintiff was allowed to represent inmates at the grievance hearings in question. Plaintiff's First Amendment rights were therefore not infringed.

However, assuming *arguendo* that the report infringed on plaintiff's freedom of speech, the plaintiff has failed to state a First Amendment claim. *Turner v. Safley,* 482 U.S. 78, 107 S.Ct. 2254, 96 L.Ed.2d 64 (1987), established four factors for determining whether prison officials have acted reasonably in enforcing rules that impact on a protected First Amendment right:

(1) A valid, rational connection between the regulation and a legitimate, justifying governmental interest;

(2) Whether prison inmates retain alternative means of exercising the right affected by the regulation;

(3) How accommodation of the right would affect guards, inmates, and the allocation of prison resources; and

(4) Whether ready alternatives are not available.

*Turner,* 482 U.S. at 89–90, 107 S.Ct. at 2262. As discussed, *infra,* to the extent that plaintiff was exercising his First Amendment right, he was doing so in a way that interfered with the ability of inmate work-crews to report to their assigned locations. He thus interfered with the security and order of the institution. A rational connection existed between the official's action in interrupting plaintiff and their legitimate interest in preserving order and security.

Equally clearly, the plaintiff had alternative means of exercising his right to speak to those same inmates. He could have spoken to them at any of a myriad of other occasions, apart from when they were reporting for work. The plaintiff does not claim he lacked any other opportunities to communicate with those inmates. The other *Turner*

---

**1.** Although citation to unpublished Sixth Circuit precedents is disfavored, this case is referred to in the absence of clear published case law from this Circuit "because it establishes the law governing the present action and 'there is no [Sixth Circuit] published opinion that would serve as well.'" *Norton v. Parke,* 892 F.2d 476, 479 n. 7 (6th Cir.1989).

factors also demonstrate that the plaintiff's right to freedom of speech was not violated by the filing of the disciplinary report. Summary judgment is therefore GRANTED for the defendants on the First Amendment issue raised by plaintiff.

### C. Equal Protection Claim

■ El–Amin's equal protection claim is clearly meritless. A prison inmate cannot make out an equal protection violation merely by alleging that other inmates were treated differently. He would have to demonstrate that he "was victimized because of some suspect classification, which is an essential element of an equal protection claim." *Booher v. United States Postal Service*, 843 F.2d 943, 944 (6th Cir.1988); *Newell v. Brown*, 981 F.2d 880, 887 (6th Cir.1992). El–Amin does not allege that he was singled out because of his membership in some group or because of some immutable characteristic over which he has no control. Plaintiff's equal protection claim is therefore DISMISSED.

### D. Biased Disciplinary Board

■ Defendants Tirey, Foster, and Moore have denied any bias in their handling of the plaintiff's disciplinary hearing. More importantly, the plaintiff's complaint alleges no objective basis for this claim. *Wolff* holds that due process requires the fact-finder in a disciplinary proceeding to be sufficiently impartial that he will not present "a hazard of arbitrary decision making." *Wolff*, 418 U.S. at 570–72, 94 S.Ct. at 2981–82.[2] *See also Walker*, 558 F.2d at 1258. A board whose discretion is circumscribed by regulations and follows those established procedures and adheres to *Wolff's* procedural requirements, does not pose a hazard of arbitrariness violative of due process. *Wolff*, 418 U.S. at 571, 94 S.Ct. at 2981.

Tennessee Department of Corrections (TDOC) Policy and Procedure § 502.-01(VI)(A)(2) defines conditions that, if pres-

ent, preclude a board member's participation. Those conditions are:

(1) The employee is the reporting officer; or

(2) The employee participated directly in the investigation of the alleged disciplinary violation; or

(3) The employee has personal knowledge about the case, unless that knowledge is so widespread as to be known by all employees; or

(4) The employee has a personal interest in the outcome of the disciplinary proceeding; or

(5) The employee is the defendant's counselor.

Tirey was not present on May 21, 1991, at the gate. The plaintiff does not allege that Tirey had any personal knowledge of the facts on which the charge were based, or that Tirey participated in the investigation of the charge. Finally, the plaintiff does not allege that defendant Tirey had any personal interest in the disposition of the disciplinary charge.

■ El–Amin claims Tirey was biased because he was a member of the grievance committee that heard the grievances which El–Amin was discussing with the inmates at the gate, and because Tirey used allegedly leading questions to interrogate witnesses during the disciplinary hearing. This claim is specious. A prison disciplinary board member's impartiality is not compromised by his sitting on a grievance board hearing complaints that are, at best, only tangentially related to the disciplinary defendant's actions. The grievances had nothing to do with the validity of the "creating a disturbance" rule, with the conduct of the plaintiff in speaking to inmate work-crews, or with the credibility of any of the witnesses who testified at the disciplinary hearing.

Nor was Tirey's questioning of witnesses during the hearing a basis for recusal. The plaintiff's characterization of Tirey's conduct

---

**2.** *See also Bills,* 631 F.2d at 1291–98; *Walker v. Hughes,* 558 F.2d 1247 (6th Cir.1977); *Malik v. Tanner,* 697 F.Supp. 1294 (S.D.N.Y.1988); *Vines v. Howard,* 658 F.Supp. 34 (E.D.Penn.1987); *Pino v. Dalsheim,* 605 F.Supp. 1305 (S.D.N.Y.

1984); *Bartholomew v. Reed,* 477 F.Supp. 223 (D.Ore.1979); *Tate v. Kassulke,* 409 F.Supp. 651 (W.D.Ky.1976); *Fife v. Crist,* 380 F.Supp. 901 (D.Mon.1974).

as leading the witnesses and distorting the facts is an obvious exaggeration and is meritless. Accordingly, plaintiff's claims regarding the impartiality of the disciplinary hearing board are also **DISMISSED.**

### E. Void for Vagueness Claim

 El–Amin claims that the disciplinary offense of "creating a disturbance" was too vague to give him notice of the forbidden conduct. Notice is the fundamental, initial requirement of due process: was the disciplinary offense defined so vaguely that the inmate was unable to know how he should act?

> "[B]ecause we assume that man is free to steer between lawful and unlawful conduct, we insist that laws give the person of ordinary intelligence a reasonable opportunity to know what is prohibited, so that he may act accordingly."

*Grayned v. City of Rockford,* 408 U.S. 104, 108, 92 S.Ct. 2294, 2298–99, 33 L.Ed.2d 222 (1972); *Adams v. Gunnell,* 729 F.2d 362, 368–69 (5th Cir.1984).

 Ordinarily, a rule or regulation must be specific enough that a reasonable person could understand the conduct that is prohibited. "Void for vagueness simply means that criminal responsibility should not attach where one could not reasonably understand that his contemplated conduct is proscribed." *United States v. Harriss,* 347 U.S. 612, 617, 74 S.Ct. 808, 811, 98 L.Ed. 989 (1954). However, "[w]here criminal prosecution is not at issue, a broad regulation can be given content by the authorities through its proper application." *Waters v. Peterson,* 495 F.2d 91, 99 (D.C.Cir.1973).

 It is well established that "void for vagueness" challenges to statutes based on grounds other than the First Amendment "must be examined in the light of the facts of the case at hand." *United States v. Mazurie,* 419 U.S. 544, 551, 95 S.Ct. 710, 715, 42 L.Ed.2d 706 (1975) (citing *United States v. National Dairy Products Corp.,* 372 U.S. 29, 83 S.Ct. 594, 9 L.Ed.2d 561 (1963). Accordingly, "one to whose conduct a statute clearly applies may not successfully challenge it for vagueness." *Village of Hoffman. Estates v.*

*The Flipside, Hoffman Estates, Inc.,* 455 U.S. 489, 495, 102 S.Ct. 1186, 1191, 71 L.Ed.2d 362 (1982) (citing *Parker v. Levy,* 417 U.S. 733, 757, 94 S.Ct. 2547, 2562, 41 L.Ed.2d 439 (1974); *see also Cohoon v. Rees,* 820 F.2d 784, 785 (6th Cir.1987); *Springfield Armory, Inc., v. City of Columbus,* 805 F.Supp. 489 (S.D.Ohio 1992). Thus the court must look to the specific situation in which the rule was applied to determine if the rule is so vague as to violate due process. *Adams,* 729 F.2d at 369. The ultimate issue is whether the person had fair warning that his conduct was proscribed. *Id.*

 Generally, due process prohibits excessively vague laws. When, however, courts analyze whether *prison regulations* comply with due process, the degree of specificity required is not the same as that required for those laws applicable to free citizens.

> Due process undoubtedly requires certain minimal standards of specificity in prison regulations, but we reject the view that the degree of specificity required of such regulations is as strict in every instance as that required of ordinary criminal sanctions. This results from the fundamental difference between normal society and prison society. The maintenance of strict security and discipline, with its unfortunate but unavoidable circumscription of an inmate's freedom to act, is essential to safe and efficient prison administration. As such, it is nearly impossible for prison authorities to anticipate, through narrowly drawn regulations, every conceivable form of misconduct which threatens prison security.

*Wolfel,* 972 F.2d at 717 (citing *Meyers v. Alldredge,* 492 F.2d 296, 310 (3rd Cir.1974) (citations omitted).

In explaining this disparity in treatment, the Fifth Circuit has explained:

> "[O]ne cannot automatically apply procedural rules designed for free citizens in an open society, ... to the very different situation presented" by a prison disciplinary proceeding.... Because "legalistic wrangling" over the meaning of prison rules "may visibly undermine the [prison] administration's position of total authority," federal courts have deferred to the

interpretation of those rules by prison authorities "unless fair notice was clearly lacking."

*Adams,* 729 F.2d at 369 (citations omitted).

In *Wolfel,* the court held a prison regulation prohibiting disruptive conduct "unconstitutionally vague *as applied to the inmate conduct in this case,* given the past practice of prison officials." *Id.* at 717–18 (emphasis in original). The prisoners in *Wolfel* were punished for circulating a petition, conduct not inherently unlawful or wrongful, after inmates had previously taken up petitions without being subjected to disciplinary action. In contrast, in the case at bar, defendants contend they imposed discipline because the plaintiff was clearly engaged in conduct that disrupted the security and order of the prison.

According to both the complaint and the defendants' affidavits, the disciplinary charge arose out of an incident occurring near the Tower number 5 "sally port" gate at Fort Pillow. *Exhibit 2 to Defendants' Motion for Summary judgment, Affidavit of Defendant Charles Ring, ¶2, at 1 (hereinafter cited as Ring Aff.).* Each inmate assigned to the "long-line" work crew[3] was required to report to that gate so that a guard could check his name and let him out of the prison to work. *Id.* According to defendant Hemby's affidavit, about thirty inmates were waiting to be checked through the gate, supervised by four to five correctional officers. *Exh. 1 to Def.'s Motion, ¶3.* Plaintiff was admittedly speaking to some of these inmates. The defendants assert that a group of fifteen to twenty inmates were gathered around plaintiff. The defendants assert, without rebuttal or contradiction from the plaintiff, that he was interfering with their control over the inmates being conducted through the gate. Hemby and Ring attest in their affidavits that inmates assigned to the work crews were delayed in going through the gate.[4]

Hemby states that he heard the plaintiff urging the long-line inmates "we can do this if we stick together."[5] Hemby recognized that the plaintiff was urging the other inmates to take some unspecified joint action. Hemby informed Lieutenant Smith[6] that the plaintiff was interfering with the passage of the long-line crews through the gate. Smith ordered the plaintiff to be placed inside the gate building. Defendant Beaver escorted plaintiff to the building, and the officers were then able to check the work crews through the gate.[7] A disciplinary report was completed, charging plaintiff with creating a disturbance.[8]

---

**3.** The exact nature of the work performed by "long-line" crews has not been presented to the court, although it apparently involves out-doors manual labor. This issue is not material, however, to the disposition of this motion.

**4.** Neither affidavit states the exact amount of delay officers experienced in checking out the crews. The disciplinary report, *see Attachment A, at 16–17 to Affidavit of defendant Tirey, Exh. 5 to Defendants' Motion for Summary Judgment,* states that the delay was about fifteen minutes. As defendant Beaver has not filed an affidavit, however, and as this estimate is not adopted by the other affidavits, the estimate is disregarded by the court.

**5.** Hemby's testimony at the disciplinary hearing was that plaintiff said "if we all stick together we can do something about it." Hemby testified at the hearing, however, that he did not remember the plaintiff's exact words. This discrepancy is not material to the court's disposition of this motion.

**6.** Smith is not a party to this action.

**7.** The defendants stress that the plaintiff clearly should have known he was disrupting the check-out process because after he was escorted to the gatehouse, he continued to speak with inmates walking past, further delaying their departure. *See Ring Aff., ¶4, at 2, Def.'s Exh. 2.* They argue that he was thus placed on notice that he was creating a disturbance. The disciplinary records, however, contain no testimony confirming or rebutting that plaintiff persisted in his actions after being warned. The disciplinary board's decision was not based on this conduct. Thus at the time the rule against "creating a disturbance" was enforced, the plaintiff was apparently not convicted for persisting in creating a disturbance after being warned. The court therefore cannot consider his persistence in determining whether the rule gave adequate notice to allow him to be convicted of the initial disturbance created before he was placed in the gatehouse.

**8.** The report, *see Affidavit of defendant Tirey, Exh. 5 to Defendants' Motion for Summary Judgment, Attachment A, at 16–17,* lists Jeffery Beaver as the reporting official, and is signed by Beaver. In his affidavit, Hemby states that he filled out the report. Who actually filled out the document is irrelevant, because it is undisputed that both officers were present and that Beaver adopted

The plaintiff has not rebutted the defendants' assertions that he acted in such a manner that defendants should reasonably have perceived those actions to be entreaties to the other inmates. He has not rebutted their assertions that he was standing near workers waiting to leave the prison, that he initiated conversations with those workers, that a group of inmates gathered around him, that inmate-workers were slow in responding to guards calling their names to check them through the gate, and that the inmate-workers were not moving through the gate fast enough. There is thus no genuine issue of material fact that a disturbance caused by the plaintiff existed at Fort Pillow on May 22, 1991. It is also undisputed that the plaintiff had previously worked on the long-line crew and was familiar with Fort Pillow rules and procedures. He thus was aware that the delay in movement of prisoners through the gate, combined with an assembly of prisoners near the gate, disrupted the normal operation of the prison. In addition, the plaintiff's contemporaneous exhortation to the other inmates to join in unspecified concerted action obviously created a serious security risk.

██ The law does not require that prison officials precisely define in advance every possible forbidden action. The definition may await application to specific circumstances. If the application is fair, i.e., if the charge and conviction are not a mere arbitrary exercise of power, then the rule does not violate due process. Under these circumstances, the rule against creating a disturbance was fairly applied to conduct that the plaintiff had reason to know violated prison rules. As plaintiff had "fair warning that [his] conduct was proscribed," *Adams*, 729 F.2d at 369, the rule against creating a disturbance was not an arbitrary exercise of power, and was thus not applied in violation of due process.

El–Amin also seems to allege, however, that he was unfairly charged with a class A

disciplinary offense. Although this claim is styled as one in which the board imposed an excessive period of punitive segregation, a claim that is essentially not cognizable under the due process clause,[9] implicit in this claim is the assertion that even if plaintiff should have realized his conduct constituted "creating a disturbance," that he should not have anticipated it would be treated as a "Class A" offense.

This claim is, however, meritless. The plaintiff was aware that disciplinary boards have discretion to classify "creating a disturbance" at the hearing, dependent on the facts. Under the circumstances of a security risk and interference with prison operations, considered in light of the official's core function of maintaining prison security, *Turner*, 482 U.S. at 92, 107 S.Ct. at 2263, and the relaxed standard for giving notice of prison rules, the plaintiff received fair notice that his conduct might result in the imposition of twenty days segregation. The defendants' motion for summary judgment is accordingly **GRANTED** on the plaintiff's claim that the "creating a disturbance" rule violated due process.

### F. Qualified Immunity

██ Even assuming for the purposes of argument that the plaintiff should not have anticipated that his conduct constituted "creating a disturbance," the defendants are protected by qualified immunity. "Government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982). The question of whether an official is protected by qualified immunity turns on "the objective legal reasonableness" of the action, assessed in light of the legal rules that were "clearly established" at the time the action was taken. *Id.* at 818–19, 102 S.Ct. at 2738; *Long v. Norris*, 929 F.2d 1111,

the report as his own by signing as the reporting official.

**9.** Ordinarily, the period of segregation is not subject to review by the court unless the period

were of such length as to amount inherently to cruel and unusual punishment. Twenty days is obviously not such a lengthy period.

1114–15 (6th Cir.), *cert. denied, Jones v. Long,* —— U.S. ——, 112 S.Ct. 187, 116 L.Ed.2d 148 (1991).

As explained by the Sixth Circuit in *Caldwell v. Moore,* 968 F.2d 595, 599 (6th Cir. 1992), under this objective legal reasonableness standard, individual claims of immunity must be analyzed on a case by case basis to determine whether the plaintiff's federal or constitutional rights were so clearly established when the alleged misconduct was committed that any official in the defendant's position would understand that his conduct violates those rights. *See Anderson v. Creighton,* 483 U.S. 635, 640, 107 S.Ct. 3034, 3039, 97 L.Ed.2d 523 (1987); *Williams v. Ellington,* 936 F.2d 881, 885· (6th Cir.1991); *Long,* 929 F.2d at 1115. The official will be immune "if officers of reasonable competence could disagree" on whether the conduct violated the plaintiff's rights. *Gossman v. Allen,* 950 F.2d 338, 341 (6th Cir.1991) (quoting *Malley v. Briggs,* 475 U.S. 335, 341, 106 S.Ct. 1092, 1096, 89 L.Ed.2d 271 (1986)).

 Prison officials exercising a discretionary function are protected from personal liability by qualified immunity "as long as their actions could reasonably have been thought consistent with the rights they are alleged to have violated." *Wolfel,* 972 F.2d at 719. In deciding whether the right at issue was clearly established, "the particular circumstances of the given case need not have been previously held illegal ... but the right must be defined in a manner that puts a reasonable official on notice that his actions are illegal or unconstitutional." *Caldwell,* 968 F.2d at 599 (quoting *Marsh v. Arn,* 937 F.2d 1056, 1067 (6th Cir.1991)). A court determining whether a right is clearly established should examine whether the right has been enunciated by "the United States Supreme Court, the courts of its own circuit, the highest state court in which it sits, and under very limited circumstances, the courts from other federal circuits." *Id.,* 968 F.2d at 599.[10]

In this case, the plaintiff relies on two district court opinions from outside Tennessee: *Landman v. Royster,* 333 F.Supp. 621, 655–56 (E.D.Va.1971) and *Tate v. Kassulke,* 409 F.Supp. 651 (W.D.Ky.1975), for the proposition that a prison regulation defined only as "creating a disturbance" is unconstitutionally vague. Given that the substantial Supreme Court precedent cited above nowhere mandates that every kind of disturbance that could result in disciplinary action be specifically listed in a regulation, plaintiff can hardly argue that these two isolated twenty-year old decisions from neighboring state district courts provide adequate precedent to nullify the published TDOC regulation. Any determination that the plaintiff's rights were "clearly established" must be derived from some other source.

As noted, it is undisputed that the defendants were acting in reliance on a published regulation available to the plaintiff. Qualified immunity protects "a prison official who relies on a facially valid regulation unless he knows or should know that the regulation violates a well established constitutional right consisting of the particular act for which he inflicts punishment." *Wolfel,* 972 F.2d at 719–20. Further, qualified immunity protects "all but the plainly incompetent or those who knowingly violate the law." *Wolfel,* 972 F.2d at 719 (quoting *Anderson,* 483 U.S. at 638, 107 S.Ct. at 3038; and *Malley,* 475 U.S. at 344–45, 106 S.Ct. at 1098).

In this case, it is undisputed that the defendants charged plaintiff with "creating a disturbance" because defendants perceived that he was interfering with the performance of their duties and the order and security of the prison. The officers have submitted affidavits stating that they made a discretionary decision that it would be dangerous to prolong the check-out of the work crews, particularly in light of the plaintiff's requests for the inmates to act jointly. The officers exercised their discretion in removing plaintiff

---

**10.** In an extraordinary case, it may be possible for the decisions of other courts to provide such "clearly established law." These decisions must both point unmistakably to the unconstitutionality of the conduct complained of and be so clearly foreshadowed by applicable direct authority as to leave no doubt in the mind of a reasonable officer that his conduct, if challenged on constitutional grounds, would be found wanting. *Daugherty v. Campbell,* 935 F.2d 780, 784 (6th Cir.1991); *cert. denied,* —— U.S. ——, 112 S.Ct. 939, 117 L.Ed.2d 110 (1992).

from the area. Even if due process required the regulation prohibiting inmates from creating a disturbance to be more specific, these defendants applied that rule in good faith reliance on its validity as applied to the situation confronting them. They, therefore, did not act arbitrarily. Consequently, defendants Ring and Hemby are protected by qualified immunity.

The plaintiff's response and complaint could be construed to argue that there was no immediate threat, violence or actual insurrection in progress, and that the guards could have merely ordered him to leave the area and told the work crews to check out more quickly. This contention is meritless. Prison guards need not wait until a prison activity is seriously interrupted, impeded, prevented, or disrupted before taking action. Again, the core function of a prison is to maintain security, and guards may act in anticipation of such problems. So in this situation, the defendants were not obliged to wait until other inmates responded to plaintiff's entreaties by acting with him or in response to those requests. The officer's discretion would be meaningless if they could not act until a group of inmates had already completed and set in motion their plans for some disruptive activity. For the reasons stated above, the motion of defendants Hemby and Ring for summary judgment on the basis of qualified immunity is **GRANTED** as to plaintiff's claim that the "creating a disturbance" rule was applied in violation of due process. As the officers at the scene of the disturbance were protected by qualified immunity for enforcing the creating a disturbance rule, the remaining defendants are also protected by qualified immunity, in so far as the plaintiff claims that the rule was so vague as to violate due process, and summary judgment is also **GRANTED** on their behalf.

### G. Inadequate Hearing Summary

 Plaintiff alleges that the hearing summary does not contain any evidence supporting the offense of "creating a disturbance." As just discussed, however, the record is replete with such evidence. A federal court's review of the quantum of evidence supporting a prison disciplinary board's decision is limited to determining whether some evidence supports the decision. *Hill,* 472 U.S. at 455, 105 S.Ct. at 2774. The court is not permitted to re-weigh the evidence presented to the board. *Id.* at 455, 105 S.Ct. at 2774. Prison official's determinations in disciplinary cases must be made quickly in a highly charged atmosphere, *id.* at 456, 105 S.Ct. at 2774, and the "Constitution does not require evidence that precludes any conclusion but the one reached by the disciplinary board." *Id.* at 457, 105 S.Ct. at 2775. Unlike *Hill,* in which there was no direct evidence of the inmate's involvement in an assault, the record in this case is replete with testimony that El–Amin created a disturbance. As the disciplinary record complied with *Hill,* the written findings necessarily satisfied *Wolff*'s requirements. *Hudson,* 848 F.2d at 688.[11]

### H. Refusal To Allow Live Inmate Testimony

 El–Amin claims that Tirey violated his rights by refusing to allow him to call witnesses to testify in person on his behalf, but limited him to presenting their testimony through written statements. Although plaintiff argues otherwise, he does not have an absolute right to present evidence through the personal testimony of witnesses. *Ponte v. Real,* 471 U.S. 491, 495–99, 105 S.Ct. 2192, 2195–98, 85 L.Ed.2d 553 (1985). Rather, the inmate has the right to present evidence, and the disciplinary board may, for valid security concerns, limit the testimony of witnesses other than the inmate to a presentation via written statements. *Id.* at 495, 105 S.Ct. at 2195. The disciplinary board's reason for refusing to allow personal witness testimony need not be placed in a contemporaneous

---

**11.** Plaintiff argues, in reliance on *King v. Wells,* 760 F.2d 89 (6th Cir.1985), that the record consisted of merely a compilation of statements, and was thus inadequate. This argument misconstrues the holding of *King.* In that case, the disciplinary report was held deficient because it consisted merely of a reference to an investigative report, which consisted of a compilation of evidence. Here, the board's findings summarized the basis for the finding, and were clearly sufficient.

record, or in the summary of the proceeding. *Id.* at 497, 105 S.Ct. at 2196.

In this case, the board chairman refused to allow personal witness testimony, and, additionally, recorded his reasons in the disciplinary hearing summary. According to his affidavit, Tirey applied an across-the-board policy that prohibited inmates charged with a disciplinary offense and confined in the segregation unit pending the hearing from offering any evidence by the personal testimony of other inmate witnesses. Noles' affidavit, however, denies the existence of any such policy.[12]

The plaintiff alleges that the grievance hearings conducted by Tirey were held in the same location as the disciplinary hearing and while El–Amin was held in segregation, and that the same inmate-witnesses who were excluded for security reasons from testifying at the disciplinary hearing were allowed to testify in person at the grievance hearings.

*Wolff* did not mandate that prison officials conducting disciplinary hearings are obliged to adopt one rigid set of procedures. Rather, due process is satisfied if the entire proceeding does not present hazards of arbitrariness. In this case, a genuine issue of material fact remains concerning whether the proceeding was fair despite the exclusion of live-witness testimony.

The Sixth Circuit has held as violative of due process a blanket policy of refusing to allow inmates charged with disciplinary offenses to present evidence by live witnesses. *King,* 760 F.2d at 93. In this case, however, Tirey did not automatically refuse to allow plaintiff the opportunity to present any live witnesses. El–Amin was permitted, for instance, to interrogate each of the employee witnesses who testified at the hearing. However, because Tirey has offered no other explanation than the blanket policy, and because the record of the disciplinary proceeding attached to his affidavit does not include the statements of the inmate-witnesses, the court cannot rule on whether the hearing completely satisfied due process, or whether Tirey is protected by qualified immunity for his decision to disallow personal testimony by inmates. Similarly, the court cannot rule on whether Noles or Bass are entitled to summary judgment on this claim. Therefore, as to this due process claim, the defendants' motion for summary judgment is hereby **DENIED WITHOUT PREJUDICE.**

### I. Claims against Reynolds

██ Reynolds submitted an affidavit supporting his motion for summary judgment, asserting that he did not personally review the disciplinary violation, and that his records do not reflect any complaints by any of El–Amin's family members regarding the disciplinary process. Reynolds admits receiving information that the plaintiff had complained about deficiencies in the *grievance procedure* at Fort Pillow, but this fact is irrelevant to a claim that he personally failed to correct abuse of the disciplinary process to retaliate against El–Amin.

El–Amin has not rebutted Reynolds' statement denying that he was informed of any such abuse. El–Amin's disciplinary appeal filed with Bass alleges, at most, an extremely technical and legalistic error concerning the allowance of inmate witnesses. Nothing in the record would cause a reasonable person in the Commissioner's position to conclude that the disciplinary proceedings in this case were being used unfairly against the plaintiff. Accordingly, defendant Reynolds' motion for summary is hereby **GRANTED.**

For the reasons set forth above, there is no genuine issue of material fact as to any of plaintiff's claims against any of the defendants, except for (1) the claims against defendant Beaver, and (2) the claim that Tirey, Noles, and Bass violated due process by prohibiting the plaintiff from calling live witnesses at the disciplinary hearing. As to all other defendants and claims, the defendants' motion for summary judgment is hereby **GRANTED.**

IT IS SO ORDERED.

---

**12.** This assertion is somewhat confusing, in light of Tirey's clear statement at the disciplinary hearing, as recorded in the hearing transcript, that "[a]ccording to the rules and regulations of the segregation unit you will not be allowed to have inmates present at the hearing process."