IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs August 2, 2001

## LARRY WILLIAMS v. TENNESSEE DEPARTMENT OF CORRECTION

**Appeal from the Chancery Court for Davidson County**
**No. 00-1154-I     Irvin H. Kilcrease, Jr., Chancellor**

---

**No. M2000-02905-COA-R3-CV - Filed August 28, 2002**

---

Petitioner, a state inmate, appeals the trial court's decision to deny his *pro se* petition for common law writ of certiorari challenging the imposition of sanctions following a disciplinary board hearing and the court's grant of the Department of Correction's Motion to Dismiss for failure to state a claim. He alleges that the Department failed to follow disciplinary policies, and violated his due process and equal protection rights. For the reasons set forth below, we find Petitioner's claims without merit, affirm the decision of the trial court and remand the case for any further proceedings which may be necessary.

**Tenn R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court**
**Affirmed and Remanded**

PATRICIA J. COTTRELL, J., delivered the opinion of the court, in which BEN H. CANTRELL, P.J., M.S., and WILLIAM C. KOCH, JR., J., joined.

Larry Williams, Pikeville, Tennessee, Pro Se.

Paul G. Summers, Attorney General and Reporter; Michael Moore, Solicitor General; Pamela S. Lorch, Assistant Attorney General; for the appellee, Tennessee Department of Correction.

### OPINION

This case involves a *pro se* petition for common law writ of certiorari filed by a state prisoner.

### I. Facts

Appellant Larry Williams is an inmate in the custody of Tennessee Department of Correction who seeks review of actions taken against him by the Disciplinary Board at Southeastern Tennessee State Regional Correctional Facility in Pikeville ("the board"). The disciplinary actions at issue were

imposed after the board found Mr. Williams guilty of extortion, possession of contraband[1], and unauthorized financial transactions.

Taking the allegations of Mr. Williams's petition as true, as we must on a motion to dismiss, *McClenahan v. Cooley*, 806 S.W.2d 767, 768 (Tenn. 1991), the following facts are alleged. Mr. Williams was placed in segregation pending the investigation of the disciplinary charges. Six days later, he received disciplinary reports for the charges. A hearing was held the next day on the unauthorized financial transactions and drug selling charges. He was sanctioned with a written warning on the unauthorized financial transactions charge, and the drug selling charge was dismissed for a "re-write" based on the fact that the report alleged the incorrect charge.[2] Eleven days later, the hearing on the extortion and contraband charges was held. Mr. Williams was found guilty and sentenced on the extortion charge to ten (10) days in segregated confinement, but was given credit for time served in segregation pending the hearing and, on the contraband charge, was sentenced to five (5) days in segregation, but was given credit for time served.

After exhausting administrative remedies by appealing the board decision to both the warden and commissioner, Mr. Williams filed a petition for writ of certiorari in Davidson County Chancery Court. The petition alleged that the Department had violated various Departmental policies regarding procedure for disciplinary proceedings and, therefore, had denied him due process and equal protection of the law.

Mr. Williams sent numerous discovery requests to the State who responded by requesting an extension of time in which to answer the discovery. The court granted that request and, in the meantime, the State filed a Motion to Dismiss pursuant to Tenn. R. Civ. P. 12.02(6) for failure to state a claim. The trial court granted the Motion to Dismiss the petition, stating:

> Petitioner asserts that the Board violated his procedural due process rights. When determining whether a due process violation has occurred, the court must first identify the existence of a protected right. In *Sandin v. Conner*, 115 S. Ct. 2293, 132 L. Ed. 2d 418 (1995), the Supreme Court held that a liberty interest is only created when prison procedures impose atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life. The *Sandin* court concluded that the placement of an inmate in punitive segregation was not such a deprivation that would entitle the inmate to due process protections. *Id*.; *See also E.L. Reid v. Sundquist*, No. 01A01-9709-CH-00494, 1998 Tenn. App. LEXIS 144 (Tenn. Ct. App. Feb. 27, 1998). Here, petitioner received a written reprimand in addition to ten (10) days time served and five (5) days time served. Thus, it is the opinion of this court that the restrictions placed on the petitioner did not impose such atypical and significant

---

[1] The contraband at issue was cologne, after shave, and similar toiletry items.

[2] The petition does not inform us of the final disposition of the re-written charge. However, Mr. Williams's petition alleges he was punished only on the extortion, contraband, and unauthorized financial transaction charges.

hardships on the petitioner such as to create a liberty interest that would invoke due process requirements. Therefore, after careful consideration of all the evidence in the record this court is of the opinion that respondent's motion should be granted. Accordingly, petitioner's petition is dismissed.

After this judgment, Mr. Williams filed a motion for summary judgment. He then filed a motion to reinstate the writ of certiorari and to withdraw the court's memorandum and order entered earlier. The trial court reviewed the motions and held that the court's order dismissing the petition for failure to state a claim remained proper and correct.

Mr. Williams appeals the decision of the trial court and presents the following issues on appeal: (1) whether the trial court was correct in denying Mr. Williams's motion for summary judgment[3]; and (2) whether the trial court was correct in granting the motion to dismiss the petition for failure to state a claim. We affirm the decision of the trial court for the reasons set forth below.

II.  Standard of Review

A Tenn. R. Civ. P. 12.02(6) motion to dismiss for failure to state a claim upon which relief can be granted tests only the legal sufficiency of the complaint, not the strength of the petitioner's proof. *Cook v. Spinnaker's of Rivergate, Inc.*, 878 S.W.2d 934, 938 (Tenn. 1994). The basis for the motion is that the allegations contained in the complaint, considered alone and taken as true, are insufficient to constitute a cause of action. *Id.* In resolving the issues in this appeal, we are required to construe the complaint liberally in the plaintiff's favor and take the allegations of the complaint as true. *Bell v. Icard, Merrill, Cullins, Timm, Furen, and Ginsburg, P.A.*, 986 S.W.2d 550, 554 (Tenn. 1999). Our standard of review on appeal from a trial court's ruling on a motion to dismiss is *de novo*, with no presumption of correctness as to the trial court's legal conclusions. *Stein v. Davidson Hotel Co.*, 945 S.W.2d 714, 716 (Tenn. 1997).

The scope of our review is also defined by the procedural vehicle Mr. Williams correctly utilized to assert his claim, the petition for common law writ of certiorari. *Rhoden v. State Dep't. of Corr.*, 984 S.W.2d 955, 956 (Tenn. Ct. App. 1998) (citing *Bishop v. Conley*, 894 S.W.2d 294 (Tenn. Ct. App. 1994)) (The proper procedural vehicle for a prisoner seeking review of a disciplinary action of the Department of Correction is by petition for common law writ of certiorari.) Under such a petition, a court's review of administrative agency decisions is very limited.

"The common law writ of certiorari is not available to test the intrinsic correctness of the law or facts of a particular case." *Yokley v. State*, 632 S.W.2d 123, 126 (Tenn. Ct. App. 1981). Because the intrinsic correctness of the decision of the lower tribunal is not subject to judicial review, *Powell v. Parole Eligibility Review Bd.*, 879 S.W.2d 871, 873 (Tenn. Ct. App. 1994), the scope of review

---

[3]Mr. Williams's motion for summary judgment was filed after the grant of the motion to dismiss. Unless or until the trial court set aside its order dismissing the case, the trial court was without authority to award summary judgment to Mr. Williams.

is generally limited to a determination of whether the administrative body acted within its jurisdiction or acted arbitrarily, capriciously, or illegally. *Cooper v. Williamson County Bd. of Educ.*, 746 S.W.2d 176, 179 (Tenn. 1987). In *Cooper*, the Supreme Court explained, "The scope of review under the common law writ does not ordinarily extend to a redetermination of the facts found by the administrative body." *Id*.

## III. Due Process

A claim of denial of due process must be analyzed with a two-part inquiry: (1) whether the interest involved can be defined as "liberty" or "property" within the meaning of the Due Process Clause; and, if so (2) what process is due in the circumstances. *Board of Regents v. Roth*, 408 U.S. 564, 571-73, 92 S. Ct. 2701, 2706-07, 33 L. Ed. 2d 548, 557-59 (1972). Deprivation of an interest which is neither "liberty" nor "property" does not trigger the procedural safeguards of the Due Process Clause.

In *Wolff v. McDonnell*, 418 U.S. 539, 94 S. Ct. 2963, 43 L. Ed. 2d 935 (1974), having found a liberty interest in accumulated good time credits created by state statute, the United States Supreme Court nonetheless held that "prison disciplinary proceedings are not part of a criminal prosecution, and the full panoply of rights due a defendant in such proceedings does not apply." *Id*. 418 U.S. at 556, 94 S. Ct. at 2975, 41 L. Ed. 2d at 951 (citing *Morrissey v. Brewer*, 408 U.S. 471, 488, 92 S. Ct. 2593, 2603, 53 L. Ed. 2d 484, 498 (1972)).[4] While the emphasis in *Wolff* was on the "balancing of prison management concerns with prisoners' liberty in determining the amount of process due" and not on the definition of liberty interests protected by the Due Process Clause, *Sandin*, 515 U.S. at 478, 115 S. Ct. at 2297, 132 L. Ed. 2d at 425-26, the discussion of liberty interests in *Wolff* included a determination that the Due Process Clause itself did not create a liberty interest in accumulated credits for good behavior. *Wolff*, 418 U.S. at 557, 94 S. Ct. at 2975, 41 L. Ed. 2d at 951.

Subsequent to *Wolff*, the Court took the opportunity to treat more fully the issue of protected liberty interests in the prison context. *Meachum v. Fano*, 427 U.S. 215, 96 S. Ct. 2532, 49 L. Ed. 2d 451 (1976). In *Meachum*, the Court considered whether transfer to a different prison with less favorable conditions could only be accomplished by procedure which complied with *Wolff*. The Court specifically rejected "the notion that *any* grievous loss visited upon a person by the State is sufficient to invoke the procedural protections of the Due Process Clause." *Meachum*, 427 U.S. at 224, 96 S. Ct. at 2538, 49 L. Ed. 2d at 458. The Court continued:

> Similarly, we cannot agree that *any* change in the conditions of confinement having a substantial adverse impact on the prisoner involved is sufficient to invoke the

---

[4]Recognizing that the unique requirements of prison life necessarily involve the loss by prisoners of many rights afforded to unincarcerated citizens, the Court established the minimal constitutional requirements that must be met in prison disciplinary proceedings where a protected liberty interest is implicated. In such situations, a prisoner is minimally entitled to prior written notice of the charges, an opportunity to present witnesses when not hazardous to institutional safety and goals, an impartial decision maker, and a written statement as to the evidence relied on and the reason for the action taken. *Wolff*, 418 U.S. at 564-66, 94 S. Ct. at 2978-80, 41 L. Ed. 2d at 955-57.

protections of the Due Process Clause. The Due Process Clause by its own force forbids the State from convicting any person of a crime and depriving him of his liberty without complying fully with the requirements of the Clause. But given a valid conviction, the criminal defendant has been constitutionally deprived of his liberty to the extent that the State may confine him and subject him to the rules of its prison so long as the conditions of confinement do not otherwise violate the Constitution.

*Id*.

The court found that confinement within any of the State's prisons was "within the normal limits or range of custody which the conviction has authorized the State to impose." *Id*. 427 U.S. at 225, 96 S. Ct. at 2538, 49 L. Ed. 2d at 459. Consequently, there was no liberty interest arising from the Due Process Clause itself.

Because "[l]awful incarceration brings about the necessary withdrawal or limitation of many privileges and rights," *Jones v. North Carolina Prisoners Labor Union*, 433 U.S. 119, 125, 97 S. Ct. 2532, 2537, 53 L. Ed. 2d 629, 638 (1977) (citing *Price v. Johnston*, 334 U.S. 266, 285, 68 S. Ct. 1049, 1060, 92 L. Ed. 1356, 1369 (1948)), the Due Process Clause itself does not give rise to a protected liberty interest in freedom from deprivations which are an expected part of incarceration after conviction. In *Hewitt v. Helms*, 459 U.S. 460, 103 S. Ct. 864, 74 L. Ed. 2d 6757 (1983), the Court determined that the Due Process Clause, standing alone, did not confer a liberty interest to avoid administrative segregation, by finding that there was no constitutional liberty interest in freedom from state action taken "within the sentence imposed." *Id*. 459 U.S. at 468, 103 S. Ct. at 869, 74 L. Ed. 2d at 685. In *Hewitt*, the Court recognized that prisoners retain only "the most basic liberty interests" and determined that remaining in the general population was not one of those basic interests. *Id*. 459 U.S. at 467-68, 103 S. Ct. at 869, 74 L. Ed. 2d at 685.

In *Meachum* and *Hewitt*, the Court recognized that states may create interests which trigger the procedural protections of the Due Process Clause, pointing out that the liberty interest in *Wolff* had its roots in state law. This state-law source of liberty interests was the basis of the Court's jurisprudence regarding due process in prison settings until, in 1995, the Supreme Court abandoned the prior language-driven methodology because that methodology had shifted the focus of the inquiry away from the nature of the deprivation. *Sandin*, 515 U.S. at 480-82, 115 S. Ct. at 2298-99, 132 L. Ed. 2d at 426-28. Such analysis "strayed from the real concerns undergirding the liberty protected by the Due Process Clause." *Id*. 515 U.S. at 483, 115 S. Ct. at 2300, 132 L. Ed. 2d at 429. In *Sandin*, the Court determined it was time to return "to the due process principles we believe were correctly established in *Wolff* and *Meachum*." *Id*. While recognizing that states may, under certain circumstances, such as that presented in *Wolff*, create liberty interests, the Court found:

But these interests will be generally limited to freedom from restraint which, while not exceeding the sentence in such an unexpected manner as to give rise to protection

by the Due Process Clause of its own force, . . . nonetheless imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life.

*Id.* 515 U.S. at 484, 715 S. Ct. at 2300, 132 L. Ed. 2d at 429 (citations omitted).

In its opinion in *Sandin,* the Court stated that the case presented the first opportunity for it to address the issue of whether disciplinary confinement of inmates itself implicates constitutional liberty interests. *Id.* 515 U.S. at 486, 115 S. Ct. at 2301, 132 L. Ed. 2d at 431-32. The prisoner, Mr. Conner, had been sanctioned for a disciplinary infraction by confinement in punitive segregation for thirty days. The Court found no substantive difference between the conditions of disciplinary segregation and the conditions of administrative segregation or protective custody. The Court concluded that because the prisoner's confinement "did not exceed similar, but totally discretionary confinement in either duration or degree of restriction" the punitive segregation "did not work a major disruption in his environment." *Sandin*, 515 U.S. at 486, 115 S. Ct. at 2301, 132 L. Ed. 2d at 431. Based on its findings that: (1) Mr. Conner's disciplinary segregation did not present an atypical, significant deprivation and (2) the sanctions would not inevitably affect the duration of his sentence, the court held "Neither the Hawaii prison regulations, nor the Due Process Clause itself, afforded Conner a protected liberty interest that would entitle him to the procedural protections set forth in *Wolff.*" *Sandin*, 515 U.S. at 487, 115 S. Ct. at 2302, 132 L. Ed. 2d at 432.

While the Court did not preclude the possibility of the Due Process Clause giving rise on its own to a protected liberty interest, it made it clear that those situations would be rare and that Mr. Conner's disciplinary segregation was not a "dramatic departure" from ordinary prison confinement and was within the expected parameters of a criminal sentence. *Sandin*, 515 U.S. at 485-86, 115 S. Ct. at 2301, 132 L. Ed. 2d at 430-31.

The United States Court of Appeals for the Sixth Circuit has found that, under *Sandin*, a prison disciplinary proceeding does not give rise to a protected Fourteenth Amendment liberty interest unless it affects the duration of the prisoner's confinement or the restrictions impose an atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life. *Mackey v. Dyke*, 111 F.3d 460, 463 (6th Cir. 1997). An inmate "has no liberty interest in remaining free of disciplinary segregation because such segregation does not impose an atypical hardship . . . ." *McKinley v. Bowlen*, 8 Fed. Appx. 488, 492, 2001 U.S. App. LEXIS 8743, at *6 (6th Cir. May 1, 2001) (citing *Sandin* and *Mackey*). Absent allegations of such an atypical hardship, a prisoner cannot sustain his claim. *Jones v. Baker*, 155 F.3d 810, 812-13 (6th Cir. 1998).

Thus, disciplinary segregation for brief periods[5] is within the expected parameters of such incarceration and does not implicate a constitutionally created liberty interest. A state-law-based liberty interest can only be created where the deprivation imposes an atypical and significant hardship in relation to the ordinary incidents of prison life. *Sandin*, 515 U.S. at 484, 715 S. Ct. at

---

[5]In *Sandin*, the Supreme Court determined that thirty days was a brief period. *Sandin*, 515 U.S. at 483-85, 115 S. Ct. at 2300-01, 132 L. Ed. 2d at 429-31.

2300, 132 L. Ed. 2d at 429. Absent those factors, no liberty interest exists and the procedural requirements of Due Process do not apply.

Mr. Williams alleges that the sanctions given by the disciplinary board included ten (10) days time served on the extortion charge, five (5) days time served on the contraband charge, and a written warning on the unauthorized financial transaction charge. When we accept the facts as alleged by Mr. Williams as true, the punishments imposed on him do not constitute an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Id.*, 515 U.S. at 483-85, 115 S. Ct. at 2300-01, 132 L. Ed. 2d. At 430-31. The imposition of 15 days of punitive segregation on multiple charges is not the type of punishment that has been held to trigger the limited due process rights afforded to prisoners. Mr. Williams has not presented facts which show that he was entitled to the limited due process rights of *Wolff*, and the trial court correctly dismissed his petition for failure to state a claim.

Having determined that Mr. Williams possesses no liberty interest in freedom from placement in segregation, we also find that he has failed to state a claim for issuance of the common law writ of certiorari on the basis the board or the Department acted illegally. *Willis v. Tenn. Dept. of Corr.*, No. M2000-01397-COA-R3-CV, 2002 Tenn. App. LEXIS 389, at *45-*46 (Tenn. Ct. App. June 5, 2002) (no Tenn. R. App. P. 11 application filed) (holding that the scope of the due process protections define the 'essential requirements of the law,' for writ of certiorari purposes, in prison disciplinary proceedings); *Ahkeen v. Campbell*, No. M2000-02411-COA-R3-CV, 2001 Tenn. App. LEXIS 815, at *14-*16 (Tenn. Ct. App. Nov. 2, 2001) (no Tenn. R. App. P. 11 application filed). Thus, Mr. Williams's claim that the board acted illegally by violating various policies regarding procedure for disciplinary proceedings does not state a claim for relief under the common law writ of certiorari.

## IV. Equal Protection

In his petition for common law writ of certiorari, Mr. Williams also alleges that he was denied equal protection of the law. Specifically, in an affidavit attached to his petition, he alleges that "[he] was denied equal protection, whereas report #398564 (UFT) and #398557 (Contraband) were prepared and served six (6) days after employee observed the violation, and other inmates at DSNF who received reports more than 24 hours after employee observed the violation, had their reports dismissed."

The Tennessee State Constitution's equal protection provisions provide "essentially the same protection" as the equal protection clause found in the United States Constitution. *Tennessee Small Sch. Sys. v. McWherter*, 851 S.W.2d 139, 152 (Tenn. 1993). While equal protection requires that similarly situated persons be treated the same under the law, or that the state treat persons under like circumstances and conditions the same, *Genesco, Inc. v. Woods*, 578 S.W.2d 639, 641 (Tenn. 1979), *superseded on other grounds by Combustion Eng'g, Inc. v. Jackson*, 705 S.W.2d 655 (Tenn. 1986); *Jaami v. Conley*, 958 S.W.2d 123, 126 (Tenn. Ct. App. 1997), "[t]he Fourteenth Amendment guarantees equal laws, not equal results." *Personnel Adm'r of Mass v. Feeney*, 442 U.S. 256, 273,

99 St. Ct. 2282, 2293, 60 L. Ed. 2d 870, 884 (1979), *aff'd, Feeney v. Personnel Adm'r of Mass.*, 445 U.S. 901, 100 S. Ct. 1075, 63 L. Ed. 2d 317 (1980).

Equal protection challenges are based upon governmental classifications. The analysis for equal protection challenges involves the application of differing standards depending upon the effect. That analysis requires strict scrutiny only when the classification interferes with a fundamental right or operates to the peculiar disadvantage of a suspect class, *State v. Tester*, 879 S.W.2d 823, 828 (Tenn. 1994), however, a standard of reduced scrutiny applies in other situations,[6] requiring only that a rational basis exist for the classification, or that the classification have a reasonable relationship to a legitimate state interest. *Id.*

Unless a suspect classification or denial of a fundamental right to a particular class is involved, equal protection attacks on prison regulations are analyzed to determine whether distinctions between groups have a rational basis, or, more particularly, whether they are reasonably related to penological interests. *Lee v. Young*, No. 99-6012, 2000 U.S. App. LEXIS 28068, at *6 (6th Cir. Nov. 6, 2000) (citing *Williams v. Lane*, 851 F.2d 867, 877 (7th Cir. 1988)); *Rawls v. Sundquist*, 929 F. Supp. 284, 289 (M.D. Tenn. 1996), *aff'd*, *Rawls v. Sundquist*, No. 96-5931, 1997 U.S. App. LEXIS 9606 (6th Cir. Apr. 28, 1997).[7]

Mr. Williams does not attack any statute or regulation as an unconstitutional classification, but rather upon an allegation of unequal exercise of the discretion granted prison officials by statute and disciplinary policies.

Absent an allegation of interference with a fundamental right or discriminatory treatment based on suspect classification, a plaintiff cannot maintain an equal protection claim because he or she was treated differently from others alleged to be similarly situated. *Booher v. U.S. Postal Service*, 843 F.2d 943, 944 (6th Cir. 1988). In *Booher*, a discharged probationary employee alleged he was "singled out" for discharge and other probationary employees with worse attendance records were not similarly discharged. *Id.* The Sixth Circuit held that as a probationary employee the plaintiff had no property interest in continued employment. The court further held:

> Booher seeks to make out a violation of equal protection by claiming he was treated differently from other similarly situated employees. Fatal to this allegation is the fact that there is no claim that Booher was victimized because of some suspect classification, which is an essential element of an equal protection claim. Even assuming there was an unjustified action taken against Booher this single action, without more, cannot form the basis of an equal protection claim.

---

[6] In *Tester*, our Supreme Court confirmed the existence of a middle standard of "heightened" scrutiny, but the case before us does not fall within those situations justifying such scrutiny. *Tester*, 879 S.W.2d at 828.

[7] Even prison regulations which discriminate on the basis of suspect classifications will be upheld if the unequal treatment is "essential to prison security and discipline." *Hudson v. Palmer*, 468 U.S. 517, 523 104 S.Ct. 3194, 3198, 82 L. Ed. 2d 393, 401 (1984).

*Id.* The court reiterated that the equal protection concept does not create a classification of persons who received better treatment. *Id.* In other words, an equal protection claim does not arise simply because of differing treatment.

This reasoning has been applied in the context of a prisoner challenging the disciplinary infraction of "creating a disturbance" and the resulting punishment upon a finding of guilt by the disciplinary board. *El-Amin v. Tirey*, 817 F. Supp. 694, 697 (W.D. Tenn. 1993), *aff'd*, 1994 U.S. App. LEXIS 22118 (6th Cir. Aug. 16, 1994). After first determining that the prisoner did not have a constitutionally protected liberty interest, the court held that "a prison inmate cannot make out an equal protection violation merely by alleging that other inmates were treated differently. He would have to demonstrate that he was 'victimized because of some suspect classification, which is an essential element of an equal protection claim.'" *Id.* at 700; *see also Newell v. Brown*, 981 F.2d 880 (6th Cir. 1992), *cert. denied*, 510 U.S. 842, 114 S.Ct. 127 (1993). In other words, a prisoner alleging selective enforcement of a prison regulation cannot sustain an equal protection claim absent assertion and showing of some purposeful discrimination. *Fletcher v. Chartrand*, 869 F.2d 1490 (6th Cir. 1989) (citing *McCleskey v. Kemp*, 481 U.S. 279, 109 S.Ct. 1756, 95 L. Ed. 2d 262 (1987)). One isolated incident of uneven enforcement does not establish purposeful discrimination. *Fletcher*, 869 F.2d at 1490.

Mr. Williams has not alleged he was treated more harshly than others because he was a member of a suspect class[8] or a victim of purposeful discrimination and, therefore, he has failed to state a claim for denial of equal protection. We also note that Mr. Williams was given credit for the time served in administrative segregation before the hearing.

## V. Conclusion

Accordingly, we affirm the decision of the trial court dismissing the petition for common law writ of certiorari for failure to state a claim upon which relief could be granted and remand the case to the trial court for any further proceedings which may be necessary. The costs of the appeal are taxed to appellant, Larry Williams, for which execution may issue, if necessary.

_____
PATRICIA J. COTTRELL, JUDGE

---

[8]Although the right to personal liberty is fundamental, that right is not implicated after a person is convicted of a crime and the only issue is the manner of service of the sentence imposed. *State ex rel. Stewart v. McWherter*, 857 S.W.2d 875, 877 (Tenn. Crim. App. 1992). Mr. Williams forfeited his fundamental right to personal liberty when he committed the underlying offense for which he was convicted and sentenced.