Dennis M. WOLFEL; John Perotti; John Byrd; and Jay D. Scott (91–3661), Plaintiffs–Appellees, Cross–Appellants,

v.

Terry L. MORRIS; Wayne Walters; Charles Schramm; Richard Taylor; and Southern Ohio Correctional Facility (91–3607/4142), Defendants–Appellants, Cross–Appellees.

Nos. 91–3607, 91–3661, 91–4142.

United States Court of Appeals, Sixth Circuit.

Argued May 7, 1992.

Decided Aug. 18, 1992.

Rehearing Denied Sept. 23, 1992.

Alphonse A. Gerhardstein (argued and briefed), Laufman, Rauh & Gerhardstein, Cincinnati, Ohio, for plaintiffs-appellees, cross-appellants.

Christian B. Stegeman, Asst. Atty. Gen. (argued and briefed), Office of the Atty. Gen., Federal Litigation Section, Cincinnati, Ohio, for defendants-appellants, cross-appellees.

John Perotti, pro se.

Before: GUY and BOGGS, Circuit Judges; and RONEY, Senior Circuit Judge.*

BOGGS, Circuit Judge.

The plaintiffs in this case are inmates who were punished by prison officials for circulating a petition aimed at redressing their grievances against the conditions at the Southern Ohio Correctional Facility. The district court granted summary judgment for the plaintiffs, ruling that the prison regulations used to punish the plaintiffs were unconstitutionally vague as applied here. The court ordered that the records of the inmates be expunged of the discipline imposed as a result of these charges. The court held, however, that the plaintiffs were not entitled to money damages. In addition, the court granted a 100% enhancement of its award of fees to the plaintiffs' attorney.

The plaintiffs and the defendants challenge various aspects of the district court's summary judgment opinion in this case. For the reasons that follow, we affirm the judgment of the district court except that we reverse its granting an enhancement of the fee award. With respect to the district court's denial of the plaintiffs' request for monetary damages, we agree with the court's denial of such damages but for a different reason than that given by the district court. We hold that the defendants are entitled to qualified immunity for their actions in this case.

I

The plaintiffs are inmates at the Southern Ohio Correctional Facility ("SOCF"). In June 1988, they attempted to circulate petitions among their fellow inmates. The petitions complained of alleged human rights violations at the SOCF and the inmates intended to send these petitions to Amnesty International. The inmates, however, circulated only the signature pages of the petitions. The purpose of the list of names being circulated was not apparent, therefore, to the guards who seized it. Defendants, SOCF guards and officials, seized the signatures intended to support the petitions and charged the plaintiffs with possession of, conspiracy to possess, or attempt to possess contraband in violation of Ohio Admin.Code § 5120–9–06(E). The petitions were deemed to be contraband because the circulation of a petition is a group-organizing activity, and because the plaintiffs had failed to seek approval through Warden Morris for the formation of an "inmate group," in violation of Ohio Admin.Code § 5120–9–37. Plaintiffs Wolfel, Scott and Perotti were found guilty of these violations and disciplined. Plaintiff Byrd was found not guilty.

This suit was originally filed pro se, but counsel was eventually appointed for the plaintiffs. The plaintiffs moved for partial summary judgment, intending to reserve their right to a hearing on damages. The defendants also moved for summary judgment. The district court assigned the case

---

* The Honorable Paul H. Roney, Senior Circuit Judge of the United States Court of Appeals for the Eleventh Circuit, sitting by designation.

to a magistrate, who recommended that judgment be entered in favor of the three plaintiffs who had been punished and that their prison records be expunged of all evidence of this incident. The magistrate recommended that damages be denied. The district court adopted the recommendation regarding liability against the defendants, the expungement of the plaintiffs' records and the denial of money damages to the plaintiffs.

The district court found that the defendants had been sued in both their individual and official capacities. The court also found that the defendants did not violate the plaintiffs' due process rights by refusing to permit them to circulate the petition among fellow inmates. However, the court ruled that punishment of the plaintiffs for circulating contraband violated their due process rights. The petitions were deemed contraband because circulating petitions is a group-organizing activity and plaintiffs failed to get the advance approval required by prison regulations. However, the prison had a history of allowing inmates to circulate petitions. Furthermore, the district court found that circulation of petitions was not an inherently illegal or wrongful activity and the inmates, therefore, had no reason to believe their action was prohibited. The court found the regulation used to punish the plaintiffs unconstitutionally vague as applied in this case and that punishing the plaintiffs pursuant to the regulation violated their due process rights. The district court also held that the defendants were not entitled either to eleventh amendment immunity or qualified immunity.

As a result, the court ordered the prison officials to expunge the records of the three punished plaintiffs with respect to any punishment received as a result of these charges. The court held, however, that the plaintiffs were not entitled to monetary damages. The court ruled that the injunctive relief expunging their records fully compensated the plaintiffs and that no rational jury could find monetary relief appropriate here. The court also held that summary judgment against plaintiff Byrd was appropriate because he had not been found guilty of these charges and had not been punished in any way. Byrd, therefore, did not state a cognizable injury.

Finally, the district court awarded an enhancement of attorney's fees to the plaintiffs' attorney in this case. The court first calculated a "lodestar" figure pursuant to 42 U.S.C. § 1988, which provides that in civil rights actions brought pursuant to § 1983, a district court, in its discretion, may allow the prevailing party, other than the United States, reasonable attorney's fees as part of costs. A party is a "prevailing party" if he or she succeeds on any significant issue in litigation that achieves some of the benefit the parties sought in bringing the suit. *Hensley v. Eckerhart*, 461 U.S. 424, 433, 103 S.Ct. 1933, 1939, 76 L.Ed.2d 40 (1983). In establishing a reasonable fee, the court must determine whether the hours claimed are reasonable and then multiply the number of hours reasonably expended by a reasonable hourly rate for the services performed. *Northcross v. Board of Educ. of Memphis City Sch.*, 611 F.2d 624 (6th Cir. 1979), *cert. denied*, 447 U.S. 911, 100 S.Ct. 2999, 3000, 64 L.Ed.2d 862 (1980). After calculating this lodestar figure, the district court then awarded a 100% fee enhancement based on the contingent nature of this case.

The plaintiffs appeal the denial of damages and the denial of relief to plaintiff Byrd. The plaintiffs also claim that the district court erred in failing to enjoin any future use of the regulation to punish inmates who circulate petitions.

The defendants claim that the punishment in this case did not violate the inmates' due process rights; that they are immune from this suit; that the eleventh amendment bars this suit to the extent damages are sought; that plaintiffs lack standing to bring this suit; that plaintiffs have failed to show any injury; that the district court erred in ordering the expungement of the plaintiffs' records; and that the court erred in enhancing attorney's fees.

We address each of these issues in turn below.

## II

We review a grant of summary judgment de novo. *EEOC v. University of Detroit,* 904 F.2d 331, 334 (6th Cir.1990). Summary judgment is appropriate where there exist no genuine issues of material fact and where one of the parties is entitled to judgment as a matter of law. *Canderm Pharmacal, Ltd. v. Elder Pharmaceuticals, Inc.,* 862 F.2d 597, 601 (6th Cir.1988). A material issue of fact exists where disputed evidence is sufficient to support a verdict in favor the non-moving party by a reasonable finder of fact. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249, 106 S.Ct. 2505, 2510–11, 91 L.Ed.2d 202 (1986). "If the evidence is merely colorable or is not significantly probative, summary judgment may be granted." *Ibid.* (citations omitted).

The plaintiffs claim that the district court erred in denying them damages in this case. They claim that they were significantly injured by the punishment imposed on them. Wolfel alleges that he was denied parole in part because of the punishment he received as a result of this incident. Perotti said that the public nature of his punishment caused the other inmates to refuse to associate with him. The plaintiffs also ask for punitive damages because they believe they were punished in retaliation for the exercise of first amendment rights. They further claim that all of these events caused them mental distress and fear of engaging in future peaceful petitioning activity. The plaintiffs argue that summary judgment on the damages issue was inappropriate because there remain issues of material fact on their claim for compensation. They claim that they are entitled to damages for the deprivation of their rights. *Bivens v. Six Unknown Named Agents of the Fed. Bureau of Narcotics,* 403 U.S. 388, 395, 91 S.Ct. 1999, 2004, 29 L.Ed.2d 619 (1971). They also claim that they are entitled to "presumed damages" for this deprivation. *Memphis Community Sch. Dist. v. Stachura,* 477 U.S. 299, 311, 106 S.Ct. 2537, 2545, 91 L.Ed.2d 249 (1986). In short, the plaintiffs ask this court to remand this case for a determination on compensatory and punitive damages.

Next, the plaintiffs claim that the district court erred in limiting the injunctive relief to an order expunging the records of these prisoners. They argue that the district court should have issued an injunction preventing the prison from using this regulation in the future to prevent inmates from circulating petitions.

Finally, the inmates claim that although plaintiff Byrd was not found guilty of these charges and not disciplined in any way by prison officials, the district court erred in denying him relief. They argue that Byrd had the "distress" of defending himself against these charges and is still fearful of engaging in petitioning activity. They contend that the district court should have permitted Byrd to submit a claim for damages.

## III

First of all, we agree with, and the defendants do not challenge, the district court's conclusion that the plaintiffs had sued the defendants in both their official and individual capacities. Second, we affirm the district court's grant of summary judgment against plaintiff Byrd. Byrd was not convicted of any violation and was, therefore, not punished in any way for his activities. Summary judgment was appropriate since Byrd did not state a cognizable injury caused by the defendants' conduct. *Canderm Pharmacal,* 862 F.2d at 601.

Next, it seems clear that a prison does not violate a prisoner's rights by refusing to allow circulation of petitions. Lawfully incarcerated persons retain only a narrow range of protected liberty interests and prison officials have broad administrative and discretionary authority over the institutions they manage. *Hewitt v. Helms,* 459 U.S. 460, 467, 103 S.Ct. 864, 869, 74 L.Ed.2d 675 (1983). The right to circulate a petition in prison is not a protected liberty interest. *See, e.g. Washington v. Harper,* 494 U.S. 210, 110 S.Ct. 1028,

108 L.Ed.2d 178 (1990). (upholding prison policy that authorized treatment of prisoner with antipsychotic drugs against his will without judicial hearing). The district court, therefore, properly ruled that the prison could prevent its inmates from circulating petitions if it did so clearly and with advance warning of its policy. The district court found, however, that the following prison regulation was unconstitutionally vague as applied to this case:

(A) Inmates who wish to form a group within an institution shall apply in writing to the managing officer, or his designee.

. . . .

(B) No inmate shall be permitted to become an active member in any group inside of an institution or solicit active membership in any group until such group is approved pursuant to the terms of this rule.

Ohio Admin.Code § 5120-9-37 (1989). The inmates were also charged with possession of contraband, which is defined to include any article knowingly possessed for which permission has not been given. Ohio Admin.Code § 5120-906.

Generally, due process prohibits excessively vague laws. However, the degree of specificity required in prison regulations is not the same as that required in other circumstances:

Due process undoubtedly requires certain minimal standards of specificity in prison regulations, but we reject the view that the degree of specificity required of such regulations is as strict in every instance as that required of ordinary criminal sanctions. This results from the fundamental difference between normal society and prison society. The maintenance of strict security and discipline, with its unfortunate but unavoidable circumscription of an inmate's freedom to act, is essential to safe and efficient prison administration. As such, it is nearly impossible for prison authorities to anticipate, through narrowly drawn regulations, every conceivable form of misconduct which threatens prison security.

*Meyers v. Alldredge,* 492 F.2d 296, 310 (3rd Cir.1974) (citations omitted).

Defendants claim that the two prison regulations involved here are not impermissibly vague. They argue that the regulations clearly set forth the sort of conduct that is prohibited. In short, the defendants maintain that they did not violate the due process rights of the inmates by punishing them for circulating the petition signature sheets.

The district court held otherwise, relying on *Adams v. Gunnell,* 729 F.2d 362 (5th Cir.1984), in which inmates were punished for circulating a petition under the prison's catch-all rule punishing "disruptive conduct." The Fifth Circuit held that since such conduct was not inherently unlawful or wrongful and no inmates had been punished previously for circulating petitions, punishment under the vague regulation in that case violated the inmates' due process rights because they could not have anticipated that their actions were against prison regulations.

We agree with this analysis and the district court's application of it to these facts. The inmates at the SOCF have been allowed to circulate numerous petitions over the years while the relevant regulations were in force. The inmates in this case, therefore, had no reason to believe that they were engaging in activity prohibited by prison regulations when they circulated the petitions. The conduct here was "virtually identical to conduct previously tolerated." *Waters v. Peterson,* 495 F.2d 91, 100 (D.C.Cir.1973). Punishing the inmates for circulating the petitions, therefore, violated their due process rights since they had no fair warning that they were engaging in prohibited activity. *Grayned v. City of Rockford,* 408 U.S. 104, 108–09, 92 S.Ct. 2294, 2298–99, 33 L.Ed.2d 222 (1972); *Papachristou v. City of Jacksonville,* 405 U.S. 156, 162, 92 S.Ct. 839, 843, 31 L.Ed.2d 110 (1972).

■ In sum, we affirm the district court's holding that the prison regulations at issue are unconstitutionally vague *as applied to the inmate conduct in this case,* given the past practice of prison offi-

cials. We are not asked to consider, nor do we hold, that these rules are vague on their face. In addition, as we stated above, prison officials may prevent inmates from circulating petitions by clearly making petitions contraband and giving the inmates notice of such a regulation. Therefore, the district court was also correct in refusing to grant an injunction preventing prison officials from using these regulations to punish the circulation of petitions in the future.

## IV

The next set of issues in this case centers on the availability of particular kinds of relief to remedy this constitutional violation. These issues also involve the applicability of various forms of immunity. We will first address the question of whether or to what extent the eleventh amendment bars this suit. Next, we will consider whether the defendants, in their individual capacities, are entitled to qualified immunity.

The district court held that the eleventh amendment does not bar this suit. The plaintiffs brought this action against the defendants in both their official and individual capacities seeking both injunctive relief and damages. The district court held that the eleventh amendment protects the defendants only against an action in federal court for damages and only in their official capacities. Therefore, the eleventh amendment does not bar an action for injunctive relief or for damages against the defendants individually. The defendants claim that the eleventh amendment would bar any suit for damages in this case. Further, defendants argue that they are entitled to qualified immunity in this suit.

■ First, we affirm the district court's holding that the eleventh amendment is not a bar to injunctive relief against the defendants in their official capacities. *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 73–74, n. 10, 109 S.Ct. 2304, 2313, n. 10, 105 L.Ed.2d 45 (1989); *Kentucky v. Graham*, 473 U.S. 159, 167 n. 14, 105 S.Ct. 3099, 3106 n. 14, 87 L.Ed.2d 114 (1985). The eleventh amendment provides: "The

Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." The Supreme Court has long held that the eleventh amendment prevents a federal court from entertaining a suit brought by a citizen against his own state. *Hans v. Louisiana*, 134 U.S. 1, 10 S.Ct. 504, 33 L.Ed. 842 (1890). States are immune from such suits unless a state waives its immunity, *Welch v. Texas Dep't of Highways and Public Transp.*, 483 U.S. 468, 107 S.Ct. 2941, 97 L.Ed.2d 389 (1987) (plurality opinion); *Clark v. Barnard*, 108 U.S. 436, 2 S.Ct. 878, 27 L.Ed. 780 (1883). Congress may also expressly override that immunity pursuant to its power under section 5 of the fourteenth amendment. *Will*, 491 U.S. at 65–67, 109 S.Ct. at 2309; *Fitzpatrick v. Bitzer*, 427 U.S. 445, 96 S.Ct. 2666, 49 L.Ed.2d 614 (1976). However, if Congress intends to alter the "usual constitutional balance between the States and the Federal Government," it must make its intention to do so "unmistakably clear in the language of the statute." *Will*, 491 U.S. at 65, 109 S.Ct. at 2308 (quoting *Atascadero State Hosp. v. Scanlon*, 473 U.S. 234, 242, 105 S.Ct. 3142, 3147, 87 L.Ed.2d 171 (1985)). *See also Pennhurst State Sch. and Hosp. v. Halderman*, 465 U.S. 89, 99, 104 S.Ct. 900, 907, 79 L.Ed.2d 67 (1984).

■ This suit was filed pursuant to 42 U.S.C. § 1983. The State of Ohio has not waived its eleventh amendment immunity in this case. Further, Congress did not disturb the states' eleventh amendment immunity when it passed § 1983. *Will*, 491 U.S. at 65–67, 109 S.Ct. at 2309; *Quern v. Jordan*, 440 U.S. 332, 99 S.Ct. 1139, 59 L.Ed.2d 358 (1979). Therefore, a state is not a "person" subject to suit under § 1983. *Will*, 491 U.S. at 65, 109 S.Ct. at 2308. In addition, a suit for damages against a state official in his or her official capacity cannot be maintained pursuant to § 1983. The reason for this was well stated by the Supreme Court:

Obviously state officials literally are persons. But a suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office. *Brandon v. Holt,* 469 U.S. 464, 471, 105 S.Ct. 873, 877–78, 83 L.Ed.2d 878 (1985). As such, it is no different from a suit against the state itself.

*Id.* 491 U.S. at 72–74, 109 S.Ct. at 2313. Thus, the district court correctly held that the plaintiffs could not maintain a suit for damages against the defendants in their official capacities.

■ However, the eleventh amendment is not a bar to injunctive relief against the defendants in their official capacities. "[A] state official in his or her official capacity, when sued for injunctive relief, would be a person under § 1983 because 'official-capacity actions for prospective relief are not treated as actions against the State.'" *Id.* 491 U.S. at 73–74, 109 S.Ct. at 2313, n. 10 (quoting *Kentucky v. Graham,* 473 U.S. at 167, n. 14, 105 S.Ct. at 3106, n. 14). *See also Ex Parte Young,* 209 U.S. 123, 159–60, 28 S.Ct. 441, 453–54, 52 L.Ed. 714 (1908). The district court in this case ordered that the records of the punished inmates be cleared of any mention of the discipline imposed for circulating these petitions. As such, the district court awarded only prospective relief against the defendants. As a practical matter, the district court's order merely prevents the prison system from considering the discipline imposed in this case as part of the inmates' records in the future. As such, the district court's action is permitted pursuant to § 1983. We therefore affirm the district court's order expunging the punished defendants' records of any punishment imposed for circulating the petition signature sheets.

The second question is whether money damages are available against the defendants in their individual capacities. The plaintiffs argue that qualified immunity does not apply to this case and that they are entitled to compensatory and punitive damages against the individual defendants.

The defendants reassert their defense of qualified immunity.

■ Government officials who perform discretionary functions and whose conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known are entitled to qualified immunity. *Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982). The district court held that the defendants were not entitled to qualified immunity because they violated the inmates' right to adequate notice of prohibited conduct and they should have been aware of that right.

■ However, we hold that even though the defendants did in fact violate the prisoners' constitutional rights, as the district court correctly held, the individual defendants are nevertheless not liable in damages, because they are entitled to qualified immunity. Under the Supreme Court's doctrine of qualified immunity, government officers may not be held personally liable "as long as their actions could reasonably have been thought consistent with the rights they are alleged to have violated." *Anderson v. Creighton,* 483 U.S. 635, 638, 107 S.Ct. 3034, 3038, 97 L.Ed.2d 523 (1987). Further, "qualified immunity protects 'all but the plainly incompetent or those who knowingly violate the law.'" *Ibid.* (quoting *Malley v. Briggs,* 475 U.S. 335, 341, 106 S.Ct. 1092, 1100, 89 L.Ed.2d 271 (1986)).

In this case, the officers were relying on a published regulation. Their interpretation of that regulation to cover the events at issue was, as we and the district court have decided, in error. However, we cannot say that no reasonable official, even knowing of the general requirements of notice and specificity, could have thought that the regulation provided sufficient notice that the prisoners' actions were punishable.

In a case decided before the qualified immunity doctrine was firmly established in *Harlow,* our Circuit held that immunity was available to "a prison official who relies on a facially valid regulation unless he knows or should know that the regulation

violates a well established constitutional right consisting of the particular act for which he inflicts punishment." *Jihaad v. O'Brien,* 645 F.2d 556, 562 (6th Cir.1981).

In the same way, a reasonable official could have thought that relying on the facially valid regulation here did not violate the prisoners' constitutional rights. That being the case, the prisoners cannot show that their constitutional "rights were so clearly established when the acts were committed that any officer in the defendant's position, measured objectively, would have clearly understood that he was under an affirmative duty to have refrained from such conduct." *Dominique v. Telb,* 831 F.2d 673, 676 (6th Cir.1987).

While it is true that the inmates' fourteenth amendment rights are well-established, the regulations relied on by the defendants were similarly well-established. Further, when the petition signature pages were seized, it was not clear to the guards that the list of names were intended to support an Amnesty International petition. The names, standing alone, could have been a list for nefarious purposes as easily as for noble ones.

In any event, since the defendants reasonably relied on and applied valid regulations, they are entitled to qualified immunity for their actions. The fact that these regulations were subsequently held unconstitutionally vague as applied in a court case addressing a fairly complex legal matter cannot serve to strip these individuals of their immunity from individual liability when reasonably performing discretionary official functions. Since we find that qualified immunity applies, the plaintiffs are not entitled to money damages in this case in any event. It is therefore unnecessary for us to consider the district court's reasons for denying money damages.

## V

Finally, the defendants challenge the district court's decision to enhance the award of fees to the plaintiffs' attorney in this case. The district court granted a 100% fee enhancement to the plaintiffs' attorney. The court did so to compensate for the risk involved in accepting a prisoner civil rights case on a contingent fee basis. The court held that the fee enhancement was appropriate because "the risks involved in assuming representation of such prisoner's civil rights cases on a contingent fee basis warrant an enhancement of the fee award." The district court also pointed to the "difficulties involved in finding attorneys who will accept prisoner civil rights cases on a contingent fee basis and the fee enhancement expected in successful cases to compensate for the risk of non-compensation in contingent fee cases." The defendants contend that the risks of non-compensation in prisoners rights cases are minimal compared with other contingent fee cases and, therefore, that the enhancement was inappropriate here.

After this case was argued, the Supreme Court issued its decision in *City of Burlington v. Dague,* — U.S. —, 112 S.Ct. 2638, 120 L.Ed.2d 449 (1992). In this opinion, the Supreme Court definitively ruled on exactly the issue involved in this appeal. The Court held "that enhancement for contingency is not permitted under the fee-shifting statutes at issue." *Id.* — U.S. at —, 112 S.Ct. at 2643–44. Although the statutes at issue in that case were the Solid Waste Disposal Act and the Federal Water Pollution Control Act, the Court specifically stated that the language of those statutes "is similar to that of many other federal fee-shifting statutes, *see, e.g.,* 42 U.S.C. §§ 1988, 2000e–5(k), 7604(d); our case law construing what is a 'reasonable' fee applies uniformly to all of them, *Flight Attendants v. Zipes,* 491 U.S. 754, 758 n. 2, 109 S.Ct. 2732, 2735 n. 2, 105 L.Ed.2d 639 (1989)." — U.S. at —, 112 S.Ct. at 2641. In light of the Supreme Court's square holding, this case must be returned to the district court for a recomputation of the appropriate attorney's fee without the use of any enhancement based on the fact that the case was taken on a contingency fee basis.

## VI

For the reasons stated, we AFFIRM the judgment of the district court in all re-

spects except that we REVERSE and RE-MAND for a recomputation of the attorney's fee due in this case.