**Steven CHANCE, Plaintiff,**

v.

**Billy COMPTON, et al., Defendants.**

No. 94–2916–Ml/Bro.

United States District Court,
W.D. Tennessee,
Western Division.

Dec. 15, 1994.

Plaintiff, pro se.

## ORDER OF DISMISSAL

McCALLA, District Judge.

Plaintiff, Steven Chance, an inmate at the West Tennessee High Security Facility (WTHSF), in Henning, Tennessee, who was formerly confined at the Northwest Correctional Center (NWCC), in Tiptonville, Tennessee, has filed a complaint under 42 U.S.C. § 1983.

Plaintiff sues WTHSF, Warden Billy Compton, Unit Manager Charles Piphus, Inmate Relations Coordinator Norman Layne, Case Manager Jerry Regan, and Corporals Michael Wright and Dee Crowder. He also sues NWCC Warden Charles Noles and Officers Luis Rodriguez and Tony Mays. Plaintiff's complaint arises out of a fight at NWCC on July 10, 1994, in which plaintiff attacked other inmates with a knife. NWCC Officers restrained plaintiff and defendant Rodriguez placed him in administrative segregation. After six hours, plaintiff created a disturbance because he was in segregation without any of his property, and had to be further restrained. Plaintiff was then charged with disciplinary infractions of assaulting an inmate, assaulting a staff member, possession of a deadly weapon, threatening an employee, and creating a disturbance. Plaintiff pleaded guilty to all of these disciplinary violations except for assaulting a staff member. A disciplinary board chaired by defendant Mays conducted a disciplinary hearing

regarding this charge and found plaintiff guilty.

Plaintiff has attached copies of the disciplinary proceeding records as exhibits to his complaint. The disciplinary hearing records reflect that plaintiff admitted possessing a "shank," or homemade knife, and that he was attacking the two other inmates because he believed that they were threatening his life. He states in the disciplinary record, "I would have gone to any measure to get to them...." Disciplinary Report Hearing Summary, at 2. The disciplinary records reflect that defendant Rodriguez testified before the board that while he was in the process of breaking up a fight between Chance and another inmate, he grabbed the other inmate, not realizing that Chance was holding a shank, and then as he turned towards Chance after grabbing the other inmate, Chance was "coming at my back with the shank," and that another inmate "had grabbed inmate Chance's arm in an attempt to stop him from sticking me." *Id.*, at 2–3.

On August 22, 1994, plaintiff, at his request, was transferred from NWCC to WTHSF. In September, an IAS review board composed of defendants Regan, Layne, and Crowder recommended that plaintiff's confinement on IAS be continued. Compton approved this recommendation. Plaintiff also complains that defendant Piphus has refused to recommend his release from IAS.

The IAS review board again recommended against releasing plaintiff in October of 1994, just prior to the filing of this complaint.

■ Plaintiff alleges that his due process rights were violated by the disciplinary conviction and his placement on involuntary administrative segregation (IAS). Inmates enjoy a narrow set of due process rights when prison authorities institute disciplinary proceedings. *See Cleavinger v. Saxner,* 474 U.S. 193, 106 S.Ct. 496, 88 L.Ed.2d 507 (1985) (disciplinary board members protected by qualified immunity); *Superintendent v. Hill,* 472 U.S. 445, 455–56, 105 S.Ct. 2768, 2773–75, 86 L.Ed.2d 356 (1985) (disciplinary findings satisfy due process if supported by any evidence, however meager); *Ponte v. Real,* 471 U.S. 491, 495–99, 105 S.Ct. 2192, 2195–97, 85 L.Ed.2d 553 (1985) (disciplinary

board need not make contemporaneous record of reasons live witnesses for inmate not allowed); *Baxter v. Palmigiano,* 425 U.S. 308, 319–323, 96 S.Ct. 1551, 1558–60, 47 L.Ed.2d 810 (1976) (disciplinary board may draw adverse inference from inmate's silence; inmate has no right to cross-examination); *Wolff v. McDonnell,* 418 U.S. 539, 564–71, 94 S.Ct. 2963, 2978–82, 41 L.Ed.2d 935 (1974) (defining scope of due process application to prison disciplinary hearings); *Wolfel v. Morris,* 972 F.2d 712 (6th Cir.1992); *Hensley v. Wilson,* 850 F.2d 269 (6th Cir.1988); *Hudson v. Edmonson,* 848 F.2d 682 (6th Cir.1988); *Turney v. Scroggy,* 831 F.2d 135 (6th Cir.1987).

■ In general,

"[a]s long as the conditions or degree of confinement to which the prisoner is subjected is within the sentence imposed upon him and is not otherwise violative of the Constitution, the Due Process Clause does not in itself subject an inmate's treatment by prison authorities to judicial oversight." *Montanye v. Haymes,* 427 U.S. 236, 242, 96 S.Ct. 2543, 2547, 49 L.Ed.2d 466 (1976). Thus there is no federal constitutional right to be held in a prison system's general population, or in a particular part of a prison. *See Hewitt v. Helms,* 459 U.S. 460, 468–69, 103 S.Ct. 864, 869–70, 74 L.Ed.2d 675 (1983); *Wolff v. McDonnell,* 418 U.S. at 556–57, 94 S.Ct. at 2974–75. Nevertheless, "the repeated use of explicitly mandatory language in connection with requiring specific substantive predicates demands a conclusion that the State has created a protected liberty interest." *Hewitt v. Helms,* 459 U.S. at 472, 103 S.Ct. at 871.

■ Tennessee prison regulations have been interpreted to create a liberty interest in inmates not being confined to punitive or administrative segregation without due process protections. *Franklin v. Aycock,* 795 F.2d 1253, 1260 (6th Cir.1986) (disciplinary segregation); *Bills v. Henderson,* 631 F.2d 1287, 1294 (6th Cir.1980). Due process thus requires that a Tennessee prison inmate who is confined to punitive segregation or deprived of sentence credits be provided a disciplinary hearing in compliance with *Wolff* and *Hill.*

The scope of due process in connection with placement on administrative segregation is extremely limited, however. Prison officials

"were obligated to engage only in an informal, non-adversary review of the information supporting [the inmate's] administrative confinement, including whatever statement [he] wished to submit, within a reasonable time after confining him to administrative segregation."

*Hewitt v. Helms,* 459 U.S. 460, 472, 103 S.Ct. 864, 872, 74 L.Ed.2d 675 (1983).

■ Although state laws or regulations create any liberty interest that a TDOC inmate enjoys in connection with confinement to disciplinary or administrative segregation, the scope of "the procedural due process required before one may be deprived of a liberty interest is governed by federal constitutional law and not state law." *Black v. Parke,* 4 F.3d 442, 447 (6th Cir.1993). Procedural requirements alone do not create a substantive liberty interest, and mere violation of such procedures is not a constitutional violation. *Hewitt,* 459 U.S. at 460–61, 103 S.Ct. at 865–66; *Spruytte v. Walters,* 753 F.2d 498, 508 (6th Cir.1985) (violation of state law does not by itself constitute deprivation of due process). Even if the procedures are phrased in mandatory language, they do not create a substantive liberty interest. Thus plaintiff had no due process right to each procedure set forth in TDOC regulations, but only to those enunciated by *Wolff* or *Hewitt* and their respective progeny.

■ Plaintiff has no right protecting him from being charged with a disciplinary offense. An inmate's due process right with respect to the *filing* of a disciplinary report is subsumed within the procedures enunciated in *Wolff.* If these procedures are followed, the prisoner's due process right is protected, regardless of the truth of the initial report. *See, e.g., Freeman v. Rideout,* 808 F.2d 949, 951 (2d Cir.1986); *Sweeney v. Norris,* slip op. at 3, 1988 WL 3478 1988 U.S. APP. LEXIS 438 (6th Cir. January 19, 1988) (unpublished decision following *Freeman* ). *See also Wolfel v. Morris,* 972 F.2d 712, 716 (6th Cir.1992) (filing of report did not violate

inmate's due process rights because he was acquitted of the charge).

■ Insofar as plaintiff contends that he should not have been charged with or convicted of assault, or that he was only acting in self-defense and that the evidence fully supported his version of events, he has no claim. Plaintiff's contention amounts in actuality merely to a claim that the board's decision was not supported by the evidence. A federal court's review of the quantum of evidence supporting a prison disciplinary board's decision is limited to determining whether some evidence supports the decision. *Superintendent v. Hill*, 472 U.S. at 455, 105 S.Ct. at 2773. The court is not permitted to re-weigh the evidence presented to the board. *Id.* at 455, 105 S.Ct. at 2773. Prison officials' determinations in disciplinary cases must be made quickly in a highly charged atmosphere, *id.* at 456, 105 S.Ct. at 2774, and the "Constitution does not require evidence that precludes any conclusion but the one reached by the disciplinary board." *Id.* at 457, 105 S.Ct. at 2775.

■ The evidence alleged by the complaint to have been submitted to the board, as confirmed by the disciplinary records and summarized above, reflects that plaintiff admitted to the disciplinary board that he was approaching the staff member while holding a deadly weapon in such a way that he could stab someone with it. This admission, combined with the officer's testimony, constitutes far more evidence than the minimal amount necessary to convict an inmate of a prison disciplinary infraction in compliance with due process. This testimony thus satisfied the "some evidence" test of *Superintendent v. Hill.*

Although the evidence in this case might be characterized as meager, and there was no direct evidence identifying any one of the three inmates as the assailant, the record is not so devoid of evidence that the findings of the disciplinary board were without support or otherwise arbitrary.

*Hill,* 472 U.S. at 457, 105 S.Ct. at 2775. Unlike *Hill,* in this case the reporting officer's testimony constituted direct eyewitness evidence.

■ To the extent that plaintiff claims the board violated TDOC policies by convicting him of the assault offense, he has no due process claim. Again, although state law creates the liberty interest that requires due process be afforded in connection with disciplinary proceedings, the scope of due process required is determined by federal constitutional law, not state procedures. *Black v. Parke.* *Superintendent v. Hill* precludes any claim that the board's evidentiary decision is reviewable.

■ As plaintiff's due process rights were not violated, he has no claim that Noles violated his rights by denying his appeal of the disciplinary board's decision. Furthermore, a right to appeal disciplinary convictions is not within the narrow set of due process rights enunciated by *Wolff.* See *Boles v. Weist,* No. 87–1862, 1988 WL 58866, 1988 U.S.App. LEXIS 7942 (6th Cir. June 10, 1988).[1] Again, the scope of plaintiff's due process rights is defined by federal constitutional law, not by state procedural regulations. *Black v. Parke; Spruytte v. Walters.*

Plaintiff's claims that the disciplinary proceedings and conviction violated his due process rights lack an arguable basis either in law or in fact, and are therefore frivolous. See *Denton v. Hernandez,* 504 U.S. 25, ——, 112 S.Ct. 1728, 1733, 118 L.Ed.2d 340 (1992); *Neitzke v. Williams,* 490 U.S. 319, 325, 109 S.Ct. 1827, 1831, 104 L.Ed.2d 338 (1989).

■ Plaintiff received all the process he was due in connection with the IAS placement so long as he received a hearing. The disciplinary proceeding satisfied the requirements of *Hewitt.* To the extent that he complains of the decision to place him in administrative segregation, this claim also lacks an arguable basis either in law or in fact, and is therefore frivolous. See *Denton,*

1. Although citation to unpublished Sixth Circuit precedents is disfavored, this case is referred to in the absence of clear published case law from this Circuit "because it establishes the law governing the present action and 'there is no [Sixth Circuit] published opinion that would serve as well.' " *Norton v. Parke,* 892 F.2d 476, 479 n. 7 (6th Cir.1989).

504 U.S. at ——, 112 S.Ct. at 1733; *Neitzke,* 490 U.S. at 325, 109 S.Ct. at 1831.

Finally, plaintiff's claim against WTHSF officials for keeping him in IAS is also completely frivolous. Plaintiff admits and attached IAS review records reflecting that he has been given the opportunity to present his views regarding the placement to WTHSF officials, who have considered his submissions. Furthermore, WTHSF officials have conducted periodic reviews of the IAS placement. Plaintiff in essence merely contends that their substantive decision is wrong. The substantive merit of that decision is not subject to review by this court, however. This claim also lacks an arguable basis either in law or in fact, and is therefore frivolous. *See Denton,* 504 U.S. at ——, 112 S.Ct. at 1733; *Neitzke,* 490 U.S. at 325, 109 S.Ct. at 1831.

As the complaint is frivolous, it is DISMISSED pursuant to 28 U.S.C. § 1915(d).

The final issue to be addressed is whether plaintiff should be allowed to appeal this decision *in forma pauperis.* 28 U.S.C. § 1915(a) provides that an appeal may not be taken *in forma pauperis* if the trial court certifies in writing that it is not taken in good faith.

The good faith standard is an objective one. *Coppedge v. United States,* 369 U.S. 438, 445, 82 S.Ct. 917, 921, 8 L.Ed.2d 21 (1962). An appeal is not taken in good faith if the issue presented is frivolous. *Id.* Accordingly, it would be inconsistent for a district court to determine that a complaint is too frivolous to be served, yet has sufficient merit to support an appeal *in forma pauperis. See Williams v. Kullman,* 722 F.2d 1048, 1050 n. 1 (2d Cir.1983). The same considerations that lead the court to dismiss this case as frivolous also compel the conclusion that an appeal would be frivolous.

It is therefore CERTIFIED, pursuant to 28 U.S.C. § 1915(a), that any appeal in this matter by plaintiff, proceeding *in forma pauperis,* is not taken in good faith.

**IT IS SO ORDERED.**