NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 05a0443n.06
Filed: May 26, 2005

No. 04-3782

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

GEORGE-KHOURI FAMILY LIMITED ) 
PARTNERSHIP; LICENSED BUSINESS ) 
OWNERS OF OHIO, LLC, ) 
                ) 
    Plaintiffs-Appellants, )   ON APPEAL FROM THE UNITED 
                )   STATES DISTRICT COURT FOR THE 
v. )   NORTHERN DISTRICT OF OHIO 
                ) 
OHIO DEPARTMENT OF LIQUOR ) 
CONTROL, et al., ) 
                ) 
    Defendants-Appellees. ) 

Before: GUY, DAUGHTREY, and GIBBONS, Circuit Judges.

**JULIA SMITH GIBBONS, Circuit Judge.** Plaintiff-appellant the George-Khouri Family Limited Partnership ("Partnership") leased property to a tenant who acquired a liquor license that was later revoked. Under Ohio law, no permit could be issued or transferred to anyone on that property for one year after the revocation. Pursuant to 42 U.S.C. § 1983, the Partnership and the Licensed Business Owners of Ohio ("LBOO") sued individual officials of Ohio's Liquor Control Commission and the state Department of Commerce, Division of Liquor Control, alleging various federal constitutional claims. The district court granted judgment on the pleadings to the defendants as to one of the plaintiffs' claims and summary judgment to the defendants as to the other claims. For the reasons set forth below, we affirm the district court's orders.

**I.**

Ohio's Liquor Control Commission ("Commission") is a quasi-judicial agency that promulgates rules for implementation of Ohio's liquor laws. The Commission also conducts hearings on appeals of decisions made by the Ohio Department of Commerce, Division of Liquor Control (DLC), including those decisions made on applications for new liquor permits, renewal of permits, and transfers of permits.

In March 1999, the Partnership acquired property at 1057-1059 Old River Road in Cleveland, Ohio. On March 10, 1999, the Partnership leased two floors of the property to PDU, Inc., for use as a bar and nightclub for five years. Around May 2001, PDU sold the nightclub to new owners Eric Buckner, Mack Danzey, and Toya Danzey. The new owners entered into an assignment agreement with PDU and the Partnership to have all of PDU's rights and obligations under the lease transferred to the new owners.

Although the record is unclear on the point, Buckner and Mack Danzey evidently were authorized to operate an establishment at 1057-1059 Old River Road under PDU's liquor permit. Due to two alleged violations of Ohio liquor laws and regulations by Buckner and one of his associates in February 2002, the Commission sent a notice to the premises, addressed to PDU, that a hearing would be held on June 4, 2002, to determine whether PDU's permit should be suspended or revoked. After the hearing, the Commission revoked PDU's permit effective July 2, 2002. The Partnership learned of the revocation of PDU's liquor permit several days later. A stay of the Commission's order was obtained from the Franklin County Court of Common Pleas, but the stay

expired on July 8, 2002. An appeal from the Commission's decision was taken and then voluntarily

dismissed in October 2002.

Mack Danzey sought to transfer a liquor permit belonging to another entity to 1057-1059 Old

River Road in December 2002. In a letter dated February 21, 2003, the DLC notified Danzey that

due to Ohio Admin. Code § 4301:1-1-08,[1] the DLC would not consider Danzey's application for

transfer until October 7, 2003, one year after "the former permit holder at this location voluntarily

dismissed an appeal in the Franklin County Court of Common Pleas." Danzey appealed this

decision to the Commission. The Commission held a hearing on the appeal on June 10, 2003. On

June 30, 2003, the Commission found that the "special circumstances" waiver provision in § 4301:1-

1-08 applied and ordered that the DLC process the liquor permit transfer application.

The Partnership evidently assisted Danzey during his attempts to transfer another permit to

the 1057-1059 Old River Road location. The Partnership also made an unsuccessful attempt "to

locate a tenant with a liquor permit and the ability to enter into a lease of the premises." The

Partnership indicated that at some point PDU stopped paying rent on the premises, and the

---

[1]Ohio Admin. Code § 4301:1-1-08, otherwise known as "Rule 8," states, in part:

A former or current permit holder whose permit has been revoked for cause shall not be issued any permit for a period of one year at that location following the effective date of such revocation. A permit shall not be issued or transferred to a location for a period of one year following the effective date of a revocation or refusal to issue, transfer or renew any permit....The effective date of the revocation begins twenty-one days after the mailing date of the revocation order or upon final determination by a court if an appeal is filed or upon the dissolution of a stay order issued by the court. The commission shall have the discretion to waive the enforcement of this rule when special circumstances are shown.

Partnership threatened PDU with eviction, although the record is unclear as to when this happened, whether PDU was actually evicted, or how much rent PDU owed the Partnership.

Plaintiff-appellant LBOO is an organization of individuals and entities that operate liquor-related businesses within Ohio. According to the plaintiffs' complaint, the LBOO was formed to assist the member business owners with any issues, legal and otherwise, that they may have in operating their businesses. The Partnership is a member of the LBOO.

The Partnership and the LBOO sued the Ohio DLC, the Commission, and individual employees of the DLC and Commission,[2] alleging three counts: (1) that the application of Ohio Admin. Code § 4301:1-1-08 to the Partnership violated its procedural and substantive due process rights, violated equal protection, and constituted a regulatory taking without just compensation; (2) that the Commission did not have statutory authority under Ohio law to enforce § 4301:1-1-08; and (3) that the plaintiffs were entitled to damages, declaratory relief, and a permanent injunction. On May 14, 2004, the district court granted defendants' motion for judgment on the pleadings as to Count Two, due to lack of jurisdiction over the claim. Four days later, the district court granted summary judgment to the defendants on the remaining claims. The plaintiffs appealed to this court from both the order granting summary judgment to the defendants and the order granting judgment on the pleadings as to Count Two.

**II.**

**A.**

---

[2]The plaintiffs later stipulated to a voluntary dismissal of the DLC and Commission from the suit, leaving only the individual employees as defendants.

The defendants filed a motion for judgment on the pleadings, but they based their motion on an allegation that the plaintiffs had failed to state a claim upon which relief could be granted. Where the Rule 12(b)(6) failure-to-state-a-claim defense is raised by a Rule 12(c) motion for judgment on the pleadings, this court applies the *de novo* standard for a Rule 12(b)(6) motion in reviewing the district court's decision. *Ziegler v. IBP Hog Mkt.*, 249 F.3d 509, 511-12 (6th Cir. 2001); *Morgan v. Church's Fried Chicken*, 829 F.2d 10, 11 (6th Cir. 1987). The defendants' motion was granted as to the plaintiffs' state law claim in Count Two, on the basis that the "Eleventh Amendment...prohibits a federal court from deciding the state law claims, such as those asserted in the Amended Complaint, against state officials, unless the state has consented to be sued." This conclusion is sound.

A federal court cannot take supplemental jurisdiction over claimed state law violations by state officers. *See Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 123 (1984); *McNeilus Truck & Mfg., Inc. v. State of Ohio*, 226 F.3d 429, 438 (6th Cir. 2000). Appellants concede that the Eleventh Amendment bars a federal court from enjoining the actions of state officials on the basis of state law. *See Pennhurst*, 465 U.S. at 106. Appellants argue, however, that their complaint sought only a declaratory judgment, not injunctive relief, with regard to Count Two, and that therefore the Eleventh Amendment does not bar their claim. This is not a correct reading of the law. "The Declaratory Judgment Act...does not explicitly authorize suits against states and therefore cannot be used to circumvent the Eleventh Amendment." *United States v. South Carolina*, 445 F. Supp. 1094, 1099 (D.S.C. 1977); *see also Heydon v. MediaOne of Southeast Mich., Inc.*, 327 F.3d 466, 470 (6th Cir. 2003) ("The Declaratory Judgment Act does not create an independent basis for

federal subject matter jurisdiction....The Act only provides courts with discretion to fashion a remedy. Thus, before invoking the Act, the court must have jurisdiction already.") (citations omitted); *Foreman v. Gen. Motors Corp.*, 473 F. Supp. 166, 183 (E.D. Mich. 1979) ("The Court is not impressed that 28 U.S.C. § 2201 gives or takes away jurisdiction. As previously stated, this section is procedural."). The Act merely provides a different type of remedy for a plaintiff bringing a "case of actual controversy within [a federal court's] jurisdiction." 28 U.S.C. § 2201(a). There is no precedent suggesting that federal courts have jurisdiction over requests for a declaratory judgment that state officials are violating state law. The district court did not err in granting the defendants' motion on the pleadings as to Count Two.

**B.**

Summary judgment is appropriate if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). The court must "view the evidence and draw all reasonable inferences therefrom in the light most favorable to the non-moving party." *Little v. BP Exploration & Oil Co.*, 265 F.3d 357, 361 (6th Cir. 2001). If a reasonable jury could not return a verdict for the nonmoving party on the basis of the evidence as construed in its favor, summary judgment should be granted to the movant. *See Burchett v. Kiefer*, 310 F.3d 937, 942 (6th Cir. 2002).

In Count One of their amended complaint, the plaintiffs sought relief under 42 U.S.C. § 1983, alleging that the application of Ohio Admin. Code § 4301:1-1-08 to the plaintiffs violated the Partnership's federal constitutional rights on three bases: (1) it violated their procedural and

substantive due process rights; (2) it violated their right to equal protection under the law; and (3) it constituted a regulatory taking without just compensation. The plaintiffs' complaint sought declaratory and injunctive relief as well as damages and named four of the six defendants in both their official and individual capacities (and the other two only in their official capacities).

We first note that the Eleventh Amendment is a bar to claims for past damages against state defendants sued in their official capacities, but it does not bar prospective relief (injunctive or declaratory) against those defendants. *Rossborough Mfg. Co. v. Trimble*, 301 F.3d 482, 489 (6th Cir. 2002); *Wolfel v. Morris*, 972 F.2d 712, 719 (6th Cir. 1992); *see Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 n.10 (1989); *Edelman v. Jordan*, 415 U.S. 651, 663 (1974). Nor does the Eleventh Amendment bar suits for damages against state officials sued in their individual capacities. *Hafer v. Melo*, 502 U.S. 21, 30-31 (1991). Moreover, qualified immunity protects officials from liability only in their individual capacities and only from damages - not from declaratory or injunctive relief. *Flagner v. Wilkinson*, 241 F.3d 475, 483 (6th Cir. 2001); *Littlejohn v. Rose*, 768 F.2d 765, 772 (6th Cir. 1985). Applying these rules to the present case, the only claims plaintiffs can bring are claims for declaratory or injunctive relief against all six defendants in their official or individual capacities, and claims for damages against the four defendants named in their individual capacities. Additionally, the only claims for which qualified immunity might apply are those made by plaintiffs for damages against the four defendants named in their individual capacities.

The district court held that: (1) the four defendants named in their individual capacities are entitled to qualified immunity from any claims for monetary damages; and (2) the plaintiffs' claims for declaratory and injunctive relief could not survive summary judgment, because both their equal

protection and their due process claims failed on the merits.[3] We first address the merits of the constitutional claims for declaratory and injunctive relief, because if the appellants' due process or equal protection rights were not violated, then they cannot establish the first step in overcoming the qualified immunity defense: that a constitutional or statutory violation occurred. *See Williams v. Mehra*, 186 F.3d 685, 691 (6th Cir. 1999). We will then consider the issue of qualified immunity inquiry as to the takings claim, for which the appellants sought only damages and not declaratory or injunctive relief.

*1. Equal protection*

The equal protection clause of the U.S. Constitution "requires the government to treat similarly situated individuals in a similar manner." *Gutzwiller v. Fenik*, 860 F.2d 1317, 1328 (6th Cir. 1988). To survive an equal protection challenge, legal classifications must be "rationally related to legitimate governmental objectives." *Schweiker v. Wilson*, 450 U.S. 221, 230 (1981).

Basically, the appellants argue that in a situation like the one in the present case, where the liquor permit holder is a tenant and the state sends notices relating to liquor licenses to the permit holder only, the state is violating the equal protection clause by treating property owners who hold liquor permits differently than those who do not. Putting aside the fact that this argument seems to be merely a reworded version of the appellants' due process argument (an argument that is considered *infra*), the argument has no merit. The Partnership chose to lease its property to a tenant

---

[3]The district court noted that in a court filing not included in the joint appendix, the plaintiffs expressly stated they sought only damages - not injunctive or declaratory relief - on their claim that the application of Ohio Admin. Code § 4301:1-1-08 to the plaintiffs constituted a regulatory taking without just compensation.

who acquired a liquor license, and through this action it differentiated itself from landlords who own liquor licenses themselves. For the state to only send notices regarding liquor permits to those landlords who own liquor licenses is surely a rational way to further the government's legitimate purpose of regulating the liquor industry.[4] The state has every reason to believe that a permit holder - landlord or tenant - will pursue vigorously its interest in maintaining its liquor permit and avoiding Rule 8's one-year sanction on the property in question. The appellants' equal protection claim cannot survive summary judgment.

*2. Due process*

The appellants also claim that the defendants' enforcement of Rule 8 violated their substantive and procedural due process rights. Substantive due process has been defined as "[t]he doctrine that governmental deprivations of life, liberty or property are subject to limitations regardless of the adequacy of the procedures employed." *Pearson v. City of Grand Blanc*, 961 F.2d 1211, 1216 (6th Cir. 1992) (internal quotation marks and citation omitted). "Substantive due process claims may be loosely divided into two categories: (1) deprivations of a particular constitutional guarantee; and (2) actions that 'shock the conscience.'" *Valot v. Southeast Local Sch. Dist. Bd. of Educ.*, 107 F.3d 1220, 1228 (6th Cir. 1997). "[I]f any conceivable legitimate governmental interest supports the contested [law], that measure...cannot offend substantive due process norms." *37712, Inc. v. Ohio Dep't of Liquor Control*, 113 F.3d 614, 620 (6th Cir. 1997). Appellants make no

---

[4]The Twenty-First Amendment "gives the States wide latitude to regulate the importation and distribution of liquor within their territories." *Brown-Forman Distillers Corp. v. N.Y. State Liquor Auth.*, 476 U.S. 573, 584 (1986) (citing *Cal. Liquor Dealers Ass'n v. Midcal Aluminum, Inc.*, 445 U.S. 97, 107 (1980)).

attempt in their brief to explain how the defendants' enforcement of Rule 8 deprived them of any fundamental right or shocked the conscience. They merely argue that the Commission exceeded its statutory authority in enacting Rule 8 and unreasonably delayed the administrative hearing on the request to transfer another permit to the 1057-1059 Old River Road location. There is most certainly a "conceivable legitimate governmental interest" - that of penalizing permit holders who offend state liquor laws by prohibiting them from opening a new business under another name in the same location or transferring another license to that location - behind Rule 8, as well as the defendants' application of Rule 8 to the appellants, who chose to lease their premises to liquor permit holders. Neither the rule nor the application of the rule offended notions of substantive due process.

Procedural due process generally requires that the state provide a person with notice and an opportunity to be heard before depriving that person of a property or liberty interest. *See, e.g.*, *Thompson v. Ashe*, 250 F.3d 399, 407 (6th Cir. 2001). Only after a plaintiff has met the burden of demonstrating that he possessed a protected property or liberty interest and was deprived of that interest will the court consider whether the process provided the plaintiff in conjunction with the deprivation, or lack thereof, violated his rights to due process. *Hamilton v. Myers*, 281 F.3d 520, 529 (6th Cir. 2002). The district court held that as a landlord, the Partnership had no property interest in being able to lease to a tenant with a valid liquor permit, and "even if there were such a constitutionally protected property interest, injunctive relief would not be necessary in this case, as any harm could be remedied through the award of monetary damages." This conclusion was correct. It is true that "a holder of an Ohio liquor license has a property interest protected under the Due Process Clause. Therefore, the state must accord a liquor licensee due process before revoking the

license." *Brookpark Entm't, Inc. v. Taft*, 951 F.2d 710, 716 (6th Cir. 1991) (footnote omitted). However, the Partnership did not have such a license. Moreover, this court has never held, and the appellants cite to no authority holding, that the right to lease one's land to a tenant holding a liquor permit is a property interest protected under the Due Process Clause.

For these reasons, the appellants did not raise a genuine issue of material fact as to whether their claims for injunctive and declaratory relief based on violations of equal protection and due process rights could succeed.

## C.

Qualified immunity protects government officials from civil liability for actions taken within their official discretion insofar as these actions do not violate clearly established statutory or constitutional rights of which a reasonable official would have been aware. *See Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). It is not merely a defense to liability; rather, when applicable, qualified immunity protects government officials from lawsuits and, hence, the burdens of litigation. *See Saucier v. Katz*, 533 U.S. 194, 200-01 (2001). Whether qualified immunity applies is a question of law reviewed *de novo*. *Flint v. Ky. Dep't of Corr.*, 270 F.3d 340, 346 (6th Cir. 2001).

To assert qualified immunity, an official must first demonstrate that she acted within her discretionary authority. *See Gardenhire v. Schubert*, 205 F.3d 303, 311 (6th Cir. 2000). Once the official makes this showing, the burden shifts to the plaintiff to prove that the officer violated a right so clearly established that any reasonable official in her position would have understood it was unlawful to engage in the conduct that violated the right. *Id*. In the present case, the appellants do

not dispute that the defendants were acting within their authority as state officials, so the burden shifts to the appellants to overcome the qualified immunity defense.

This court evaluates this burden according to a three-prong standard. *See Williams*, 186 F.3d at 691. First, the court considers whether a constitutional or statutory violation occurred. *Id.* If so, the court then considers whether the right that was violated was clearly established in the sense that a reasonable person would have known of the right. *Id.* If the right was clearly established, the court's third step is to "determine whether the plaintiff has alleged sufficient facts, and supported the allegations by sufficient evidence, to indicate that what the official allegedly did was objectively unreasonable in light of the clearly established constitutional rights." *Id.* The operative question "is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." *Saucier*, 533 U.S. at 202.

As described *supra*, the appellants cannot show that a constitutional violation of their due process or equal protection rights occurred, so the defendants are entitled to qualified immunity on the plaintiffs' claims for damages based on these allegations. With regard to the takings claim, the plaintiffs sought only damages, and the district court found that qualified immunity applied.

The appellants argue that the Partnership's property was barred from being used as a liquor establishment for nearly one year by Rule 8, and this bar constituted a regulatory taking, because it "denied the Partnership all economically beneficial or productive use of its land." Regulatory takings can occur in two situations: first, when a regulation denies all economically beneficial or productive use of land, and second, when a regulation places limitations on land that fall short of eliminating every economically beneficial use yet still constitute a taking. *Anderson v. Charter*

*Township of Ypsilanti*, 266 F.3d 487, 493 (6th Cir. 2001). Plaintiffs fail to raise a genuine issue of material fact as to whether, as they claim, "the permitted and only viable use of this property is as a liquor permit establishment," and that the application of Rule 8 to the property thus constituted a taking. The Partnership knowingly took the risk of buying a property and then leasing it under the expectation that the tenant would maintain the liquor license. The tenants, not the state, were responsible for the revocation of the license and any resulting economic impact. *Cf. Blue Ribbon Props. v. Hardin County Fiscal Court*, 50 Fed. Appx. 671, 676 (6th Cir. 2002) ("There is no doubt that the County's actions interfered with Blue Ribbon's investment-backed expectations, but Blue Ribbon purchased the property with the knowledge that it could not construct or operate a landfill on it without obtaining County and state permits.").[5] In sum, plaintiffs cannot establish a genuine issue of material fact as to whether the defendants are not entitled to qualified immunity.

**III.**

For the foregoing reasons, we affirm the district court's orders granting defendants' motion for judgment on the pleadings as to Count Two and granting summary judgment to the defendants on the remaining claims.

---

[5]A fundamental problem in the appellants' argument is that it is unclear from the record exactly how the Partnership was harmed by the application of Rule 8 to the Partnership's property. Evidently, after the revocation of PDU's liquor license, the Partnership attempted unsuccessfully "to locate a tenant with a liquor permit and the ability to enter into a lease of the premises." This statement suggests that, but does not explain why, the Partnership released the new owners of PDU's nightclub, who had taken on all the rights and obligations of PDU's five-year lease running to March 2004, from their lease obligations, such as the obligation to pay rent. It seems that from the terms of the lease and assignment agreements, the Partnership was still entitled to collect rent from its tenant, regardless of whether the liquor permit had been revoked or not.